**Dolores VDA de LANDICHO,**
**Appellant (No. 90–1150),**

v.

**Jesse BROWN, Secretary of Veterans**
**Affairs, Appellee.**

**Benjamin OSEO, Appellant (No. 92–90),**

v.

**Jesse BROWN, Secretary of Veterans**
**Affairs, Appellee.**

**Nos. 90–1150, 92–90.**

United States Court of Veterans Appeals.

Argued July 25, 1994.

Decided Sept. 23, 1994.

William S. Mailander, with whom Michael P. Horan, Washington, DC, was on the pleadings, for appellant Landicho.

Michael E. Wildhaber, with whom Gershon M. Ratner, Washington, DC, was on the pleadings, for appellant Oseo.

Andrew J. Mullen, Sp. Asst. to the Asst. Gen. Counsel, with whom Mary Lou Keener, Gen. Counsel, and Norman G. Cooper, Asst. Gen. Counsel, Washington, DC, were on the pleadings, for the appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, JJ.

STEINBERG, Judge:

After having received separate memoranda in these cases from both parties on jurisdictional issues, the Court, by order dated August 31, 1993, consolidated these cases for determination of jurisdictional issues arising under the Court's practice of routinely permitting substitution of parties upon the death of an appellant while the case is pending before the Court. Upon consideration of the pleadings and oral arguments of the parties, the Court holds that substitution is not permissible in cases such as those here on appeal where the appellant is a veteran who dies while the denial by the Board of Veterans' Appeals (BVA or Board) of his or her claim for disability compensation under chapter 11 of title 38, U.S.Code, is pending on appeal before this Court. The BVA decisions will be vacated and the appeals will be dismissed. Concurrent with the issuance of this opinion, the Court is issuing an order amending Rule 43(a) of its Rules of Practice and Procedure to reflect the Court's holding here.

The motion for reconsideration in *Landicho,* having been considered by the Court, is granted. The January 19, 1993, memorandum decision, *Landicho v. Principi,* 4 Vet. App. 96 (1993), is vacated, and this opinion is issued in its stead.

## I. Background

### A. Facts Regarding Appellant Landicho

On September 17, 1990, World War II veteran Agustin S. Landicho filed a Notice of Appeal (NOA) as to an August 27, 1990, BVA decision denying an increased rating for peptic ulcer disease and denying his claim to reopen previously and finally disallowed claims for service connection for hypertensive heart disease, hypertrophic degenerative disease, hemorrhoids, beriberi, and a goiter. The Board decision had affirmed the disallowance, in a March 14, 1989, decision of the Manila Regional Office (RO) of the Department of Veterans Affairs (VA), of claims to reopen for the five conditions and affirmed the rating of 10% disability for peptic ulcer. A prior July 1985 final BVA decision had reopened prior various RO final denials of the veteran's claims for service connection for hypertensive heart disease and beriberi, and denied them. Record (R.) at 115–21. A March 1971 final RO decision had disallowed service connection for stomach ulcer, hemorrhoids, and goiter. R. at 41–42. A March 1982 final RO decision had disallowed service connection for arthritis/rheumatism. R. at 68–9.

On June 1, 1992, the Court received from the veteran's widow (the present appellant) [hereinafter, in this part, "the widow"] (1) a copy of the veteran's death certificate indicating that he had died on December 13, 1991, due to cardiac failure and (2) correspondence from her requesting the Court to find that the veteran's death was service connected. In a single-judge order dated June 11, 1992, the Court deemed her request to be a motion for substitution of parties under Rule 43(a)(2), granted that motion pur-

suant to then-current Court practice, and directed the Clerk to recaption the appeal as *"Dolores Vda de Landicho v. Derwinski"*.

In a January 19, 1993, single-judge memorandum decision, the Court affirmed the Board's denial of all six claims but remanded to the Board the matter of consideration of a claim for total disability based on individual unemployability (TDIU) that the Court held the veteran had reasonably raised to VA but which had not been adjudicated. *Landicho v. Principi,* 4 Vet.App. 96, 99–100 (1993). Citing *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992), the Court held that the substituted appellant would be free to submit additional evidence and argument as to the remanded TDIU claim. Additionally, the Court noted that her informal brief had appeared to raise, for the first time, a claim that the veteran was entitled to service connection for shrapnel wounds as well as a claim for dependency and indemnity compensation (DIC). Citing *Branham v. Derwinski,* 1 Vet.App. 93, 94 (1990), the Court's decision stated: "Should the veteran's widow wish to pursue those claims, she must first apply to VA." *Id.* at 99.

On February 2, 1993, the Secretary filed a motion for reconsideration of the memorandum decision or, in the alternative, for panel review of the memorandum decision, to modify or vacate the memorandum decision, and to stay further proceedings. He argued that, pursuant to 38 U.S.C. § 5121(a), determinations of accrued benefits are to be made only on evidence on file at the time of the veteran's death, and that the Court's reference to and reliance on *Quarles* in support of its ruling allowing the widow to submit additional evidence on remand was therefore improper. He further argued that the record on appeal does not reflect that she had filed a claim for accrued benefits or a claim for DIC before the BVA decision, and that the basis for the Court's exercise of review authority over the putative claim for accrued benefits was unclear.

On March 3, 1993, the Court ordered the Secretary to file a memorandum addressing two issues: (1) The Secretary's obligations under 38 U.S.C. § 7722 and this Court's caselaw when he receives notice of an appel-lant's death during the pendency of an appeal in this Court; and (2) the procedures followed by the Secretary in the past when he has learned of such a death. Additionally, the Court denied the Secretary's request for a stay on the ground that the motion prevented entry of judgment until the Court acted on the motion. The Court further ordered that the widow respond to the Secretary's memorandum.

On April 2, 1993, the Secretary filed a memorandum in response to the Court's order. The Secretary stated that the widow had filed a DIC/death-pension/accrued-benefits claim and a burial benefits claim with the Manila RO in February 1993, and added: "Both claims, upon return of the claims folder from VA Central Office, will be duly processed." Resp. at 4. On June 1, 1993, the widow, now represented by William Mailander, Esq., of the Paralyzed Veterans of America, filed a reply. On September 22, 1993, the widow filed a motion to file supplemental argument. On October 6, 1993, the Court granted the widow's motion and accepted the supplemental pleading for filing.

### B. Facts Regarding Appellant Oseo

On December 17, 1991, World War II veteran Andres B. Oseo filed an NOA as to a September 19, 1991, BVA decision denying an original claim of entitlement to service connection for "pulmonary tuberculosis (blurred densities, right apex)". The Board decision had affirmed the disallowance of those claims in an April 3, 1991, decision of the Manila RO. On June 16, 1992, the Court received from Benjamin Oseo, the veteran's son [hereinafter, in this part, "the son"], (1) a death certificate indicating that the veteran had died on May 12, 1992, from cardiopulmonary arrest and (2) correspondence requesting information regarding "deserved" or "earned" benefits. In a June 25, 1992, letter to the son, the Clerk of the Court informed him of his option to be substituted as the appellant and continue his father's appeal. On July 31, 1992, based on the request of the son, the Clerk ordered that the son be substituted as the appellant. Subsequently, the case was recaptioned as *"Benjamin Oseo v. Brown"*.

On September 24, 1992, the Court received a letter dated August 14, 1992, from the son. He stated that he was not disabled and that he was over 52 years old but that "there is one son of my late father or my brother[;] on the date of his [birth] he was disabled, mental, and [has had] pollio [sic] until at present time at age of 23." Benjamin Oseo asked: "Now the question is who will rece[ive] the benefit". On December 7, 1992, he filed an informal brief, stating that "our father died [of] tuberculosis" and asking the Court to "give us the appropriate action regarding this case". On February 5, 1993, the Secretary filed a motion for summary affirmance.

In a single-judge order dated March 9, 1993, the Court ordered the Secretary to file a supplemental memorandum addressing three issues: (1) The binding effect of a Court decision if (a) the Court has substituted as the appellant someone who is not a qualified accrued-benefits claimant when it appears that another individual may so qualify (another adult son exists who was born incompetent and thus may be a dependent "child" under 38 U.S.C. § 101(4)(A)(ii) (a person who, before attaining age 18, became permanently incapable of self-support)), or (b) the Court has substituted as the appellant a party who would be a qualified accrued-benefits claimant but who has not filed an accrued-benefits claim; (2) whether the son or any other party had filed an accrued-benefits claim; (3) whether, upon learning of the death of an appellant while the appeal is pending in this Court, the Secretary informs potential accrued-benefits claimants of the need to file such a claim "as is done when a veteran dies while an appeal is pending at the [RO] or BVA".

On June 21, 1993, the Secretary filed a response to the Court's order and a motion to dismiss. On October 19, 1993, the son, now represented by Michael E. Wildhaber, Esq. and Gershon Ratner, Esq. 'of the National Veterans Legal Services Project, filed a motion to vacate and remand the September 19, 1991, adverse BVA decision, focusing on the merits of the deceased veteran's claim, and filed, also, an opposition to the Secretary's motion for summary affirmance. On November 3, 1993, the son filed a memorandum in reply to the Secretary's memorandum and in opposition to the Secretary's motion to dismiss. On December 6, 1993, the Secretary filed a memorandum in response to the jurisdictional issues presented in the consolidated cases. The Secretary urged the Court to dismiss both appeals for lack of jurisdiction.

Oral argument with respect to these consolidated appeals was held on July 25, 1994. At that time, the Secretary conceded that both the appellants had filed sufficient indication of their intention to claim accrued benefits based on the veterans' underlying claims so as to have submitted "informal claims" for accrued benefits under 38 C.F.R. § 3.155(a). Following oral argument, appellant Oseo submitted a letter, dated August 5, 1994, clarifying matters raised at oral argument.

## II. Analysis

The appellants seek to have the merits of the veterans' underlying disability-compensation claims decided by this Court. They allege that permitting the BVA decisions to stand would injure or disadvantage them in their pursuit of accrued benefits and that this potential disadvantage is sufficient for there still to be a case or controversy and for them to have standing to carry on these appeals. The appellants seek to have the Board decisions reversed and service connection awarded (thereby estopping the Board from denying service connection in subsequent accrued-benefits claims), to have the Board decisions vacated and the matters remanded for further development of facts pertinent to the veterans' claims for service connection and for readjudication of the original claims for service connection, or to have the Court vacate the Board decisions (thereby removing any possible preclusive effect that the adverse Board decisions may have on the adjudication of subsequent accrued-benefits claims).

### A. Substitution

Rule 43(a) of the Court's Rules of Practice and Procedure currently provides:

(a) **Death of a Party.**

(1) Before Notice of Appeal. If a party entitled to appeal dies before filing a Notice of Appeal, the Notice of Appeal may

be filed within the time limit in Rule 4 by any person claiming entitlement to accrued benefits under 38 U.S.C. § 5121(a), by the personal representative of the deceased party's estate, by any other appropriate person, or, if there is no such person, by the party's representative of record before the Board.

(2) After Notice of Appeal. . If a party dies after a Notice of Appeal is filed or while a proceeding is pending in this Court, any person claiming entitlement to accrued benefits under 38 U.S.C. § 5121(a), the personal representative of the deceased party's estate, or any other appropriate person may be substituted as a party on motion by such person or by any party. If no such person exists, any party may suggest the death on the record and proceedings will then be as the Court directs.

U.S.Vet.App.R. 43(a). Up to this time, the Court has routinely permitted substitution under Rule 43(a)(2) when an appellant has died while his or her claim is pending in this Court. This practice is challenged by the Secretary under the circumstances of these appeals where veterans Landicho and Oseo had filed timely Notices of Appeal and (after November 17, 1988, see Veterans' Judicial Review Act, Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA § 402]) Notices of Disagreement (NOD), thereby giving this Court jurisdiction under 38 U.S.C. § 7266(a), and had subsequently died before their appeals were resolved by the Court. At the time of his death, veteran Landicho had an appeal pending here as to a BVA decision denying an increased rating for peptic ulcer disease and denying his claim to reopen previously and finally disallowed claims for five conditions for purposes of disability compensation under chapter 11 of title 38 U.S.Code. At the time of his death, veteran Oseo had an appeal pending here as to a BVA decision denying an original claim for entitlement to service connection for pulmonary tuberculosis for such disability compensation purposes.

If the Court is to continue these appeals after the deaths of the veteran appellants, we must determine what, if any, claims remain before us. We see only two possibilities: either the veteran's disability-compensation claim under chapter 11 or an accrued-benefits claim by a qualified surviving relative under 38 U.S.C. § 5121. We hold that neither such claim is pending here.

■ *1. Veterans' disability-compensation claims:* We have concluded that the veterans' claims under chapter 11 do not survive their deaths. Veterans' and survivors' benefits are provided for in federal statutes, almost all of which are codified in title 38 of the U.S.Code. Chapter 11 of title 38, makes no provision for survivors. Rather, chapter 13 provides for the award of DIC survivors benefits to specified relatives of the veteran in the event of the veteran's service-connected death or death while rated 100% disabled. 38 U.S.C. §§ 1310, 1318. The law further provides specifically for the termination of disability compensation by reason of the veteran's death to occur on "the last day of the month before such ... death occurs", 38 U.S.C. § 5112(b)(1), and for the effective date of an award of DIC for which application is received within one year after the veteran's death to occur on "the first day of the month in which the death occurred", 38 U.S.C. § 5110(d). The overall statutory scheme thus creates a chapter 11 disability compensation benefit that does not survive the eligible veteran's death.

■ It is only in the accrued-benefits provisions in section 5121 that Congress has set forth a procedure for a qualified survivor to carry on, to the limited extent provided for therein, a deceased veteran's claim for VA benefits by submitting an application for accrued benefits within one year after the veteran's death. *See* 38 U.S.C. § 5121(a), (c).

■ *2. Accrued-benefits claims:* All parties conceded at oral argument that this Court does not have jurisdiction to adjudicate accrued-benefits claims as part of either of these appeals. The Court agrees for two reasons. First, the Board has not addressed an accrued-benefits claim by either substituted appellant, and no jurisdiction-conferring NOD has been filed on any such claims under VJRA § 402. The Court's decision in

*Zevalkink v. Brown* established that such a claim was "different" (not, as the Secretary has stated, "separate"), although "derivative", from the deceased veteran's claim for the underlying benefit (disability compensation) in question. *Zevalkink*, 6 Vet.App. 483, 489–90 (1994); *see* VJRA § 402; *see generally Hamilton v. Brown*, 4 Vet.App. 528, 538 (1993). It was further established in *Zevalkink* that an NOD must be filed "as to the accrued-benefits claim in order to initiate review by the BVA, and ultimately this Court, of that claim." *Zevalkink*, 6 Vet.App. at 489. The Court reasoned:

> Although the appellant's claim for accrued benefits is related to the veteran's claims, during his lifetime, for service-connected disability benefits under 38 U.S.C. § 1110, entitlement to accrued benefits arises under 38 U.S.C. § 5121(a) and is predicated upon an accrued-benefits application filed *after* the veteran's death. *See Cates v. Brown*, 5 Vet.App. 399, 400 (1993). It would be anomalous to hold that a May 1987 NOD could apply to claims which could not have been filed prior to December 7, 1988.

*Zevalkink*, 6 Vet.App. at 489. The Court went on to determine that a document filed prior to the veteran's death could not constitute an NOD for an accrued-benefits claim that had arisen only after that death. *Ibid.*

Second, the issues involved in the Board's adjudication of the deceased veterans' underlying claims are not identical to those needing resolution in an accrued-benefits claim. In neither of the BVA decisions on appeal before us did the Board address the question whether the appellant qualifies as an accrued-benefits claimant under section 5121(a) (this question is discussed further in part II.B., below). That section sets forth precise qualifications and an order of succession, as follows:

> (a) ... [P]eriodic monetary benefits ... under laws administered by the Secretary to which an individual was entitled at death under existing ratings or decisions, or those based on evidence in the file at date of death ... and due and unpaid for a period not to exceed one year, shall, upon the death of such individual be paid as follows:
>
> . . . .
>
> (2) Upon the death of a veteran, to the living person first listed below:
>
> (A) The veteran's spouse;
>
> (B) The veteran's children (in equal shares);
>
> . . . .
>
> (5) In all other cases, only so much of the accrued benefits may be paid as may be necessary to reimburse the person who bore the expense of last sickness and burial.

38 U.S.C. § 5121(a).

■ This Court is not generally an initial trier of facts. In appeals of BVA decisions, this Court reviews fact determinations made by the Board and does not engage in de novo factfinding. *See* 38 U.S.C. § 7261(a)(4), (c); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990) ("it is the function of this Court to decide whether [BVA] factual determinations ... in a particular case constituted clear error"); *Badua v. Brown*, 5 Vet.App. 472, 473 (1993) ("determination whether appellant's third wife ... is his lawful spouse for the purposes of receiving additional VA disability pension benefits .... is a finding of fact that the Court must affirm unless that determination is found to be 'clearly erroneous'"); *Bledsoe v. Derwinski*, 1 Vet.App. 32, 33 (1990) ("clearly erroneous" standard must be applied in assessing the Board's factual "determination of the capacity of the appellant's son to support himself").

Accordingly, we cannot find either a disability-compensation or an accrued-benefits claim currently properly pending before the Court.

### B. The Court's Jurisdiction

Against this background, we advance to the question whether there can still exist, following the death of the veterans, a "case or controversy", as required under *Mokal v. Derwinski*, 1 Vet.App. 12, 13–15 (1990), and whether the substituted appellants have standing to bring the appeals.

**1. _Case or Controversy:_** Although the requirement of a "Case" or "Controversy" in Article III, Section 2, of the U.S. Constitution expressly limits the exercise of judicial power by Article III courts, and does not by its terms apply to other federal courts (such as this one) established under Article I of the Constitution, this Court has expressly held that it "will adhere to the case or controversy jurisdictional restraints adopted by Article III courts". _Mokal,_ 1 Vet.App. at 13. In any event, the concepts of "case or controversy" and "standing" emerge from common prudential principles designed to keep the judiciary in its proper case-by-case adjudicatory role and to avoid the gratuitous exercise of judicial power. _See Waterhouse v. Principi,_ 3 Vet.App. 473, 475 (1992) (citing _Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,_ 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982)). As the Supreme Court reasoned in _Valley Forge Christian College:_

> [The requirements for "standing"] assure that the legal questions presented to the Court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action. . . .
>
> . . . .
>
> . . . [T]he "cases and controversies" language of Art. III forecloses the conversion of courts of the United States into judicial versions of college debating forums.

_Valley Forge Christian College,_ 454 U.S. at 472–73, 102 S.Ct. at 759.

In _Waterhouse,_ 3 Vet.App. at 474–76, the Court made clear that it will not adjudicate hypothetical claims. Quoting from the Supreme Court's decision in _Aetna Life Ins. Co. v. Haworth,_ 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937), as to what constitutes a "controversy", the Court stated that it "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." _Waterhouse,_ 3 Vet.App. at 474. If the Court were to permit a _putative_ accrued-benefits claimant to continue the appeal, there would be no guarantee that that individual would be entitled to accrued benefits. For example, how could Benjamin Oseo be permitted to continue the appeal without settling whether he would qualify as a dependent "child" under 38 U.S.C. § 5121(a)(2)(B) and 38 U.S.C. § 101(4)(A)(ii) (defining a dependent child as one, inter alia, "who, before attaining the age of eighteen years, became permanently incapable of self-support") or would qualify as one who had borne "the expense of last sickness and burial" under 38 U.S.C. § 5121(a)(5)? Further, there is no innate guarantee, in the case of the death of any veteran, that _any_ accrued-benefits claimant exists; a veteran may die without leaving a qualified spouse, child, parent, or final-sickness-caregiver. Absent a BVA decision that a survivor is qualified as an accrued-benefits claimant under section 5121, any decision the Court would render on the deceased veterans' service connection or increased-rating claims could well be purely hypothetical.

Stated another way, the Court would be without power to "resolve the conflict through the specific relief it provides", _Waterhouse,_ 3 Vet.App. at 474, either for the deceased veterans, because their compensation claims under chapter 11 died with them, or for the appellants as putative accrued-benefits claimants because any claims they may have are not before the Court. Hence, under _Waterhouse,_ there is no longer a case or controversy before the Court in either of the instant appeals.

**2. _Standing:_** Moreover, in order to seek review in this Court under title 38, U.S.Code, an individual must be "adversely affected" by the BVA decision appealed. 38 U.S.C. § 7266(a). This requirement of aggrievement echoes the standing requirement that a party must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the [appellee]", _Waterhouse,_ 3 Vet.App. at 475 (quoting _Valley Forge Christian College,_ 454 U.S. at 472, 102 S.Ct. at 758–59; _see also Allen v. Wright,_ 468 U.S. 737, 751, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984). The potential injury alleged by the substituted appellants is that if the Court dismisses

their appeals then the BVA decisions which had denied the veterans' pending disability-compensation claims before their deaths would have preclusive effect in the adjudication of the appellants' accrued-benefits claims. Specifically, the appellants contended at oral argument that under *Zevalkink* there would have to be new and material evidence before they, as accrued-benefits claimants, could receive a merits adjudication of such accrued-benefits claims which were derived from any entitlement to disability compensation that the veterans had immediately prior to their deaths. *See* 38 U.S.C. §§ 5108, 7104(b).

■ The appellants may be *potential* accrued-benefits claimants if they have filed informal claims for benefits. If so, their asserted injuries (having the BVA decisions on appeal here stand as final binding decisions with their consequent preclusive effect on subsequent adjudications of accrued benefits claims) in this appeal must be addressed. We conclude that the appellants have filed informal claims for accrued benefits. Under 38 C.F.R. § 3.155(a) (1993), a person has submitted an informal claim for benefits under the following circumstances:

(a) Any communication or action, indicating an intent to apply for one or more benefits under the laws administered by the Department of Veterans Affairs, from a claimant, his or her duly authorized representative, a Member of Congress, or some person acting as next friend of a claimant who is not sui juris may be considered an informal claim. Such informal claim must identify the benefit sought. Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. If received within 1 year from the date it was sent to the claimant, it will be considered filed as of the date of receipt of the informal claim.

Notices of an appellant's death that are filed in this Court—in these appeals also including motions for substitution—are routinely provided to the Secretary through the Court's pleading process in each case. Accordingly, the Court holds that both substituted appellants have, as the Secretary commendably conceded at oral argument, filed sufficient indication of their intention to claim accrued benefits based on the veterans' underlying disability-compensation claims and have done so well within one year after the respective veterans' deaths, as required by section 5121(c), and thus have achieved the status of informal claimants under 38 C.F.R. § 3.155(a). The same is the case, as the Secretary also conceded at oral argument, as to the notice to the Secretary by Benjamin Oseo, apparently "acting as next friend" of his brother, of the existence of an alleged 23–year–old disabled child of the veteran and of his interest in pursuing benefits in connection with his father's veteran status. *See* 38 U.S.C. §§ 5121(a)(2)(B), 101(4)(A)(ii).

■ Hence, the Secretary was required by § 3.155(a), after those two death-notice filings were received by his representatives, to send each such informal claimant a formal accrued-benefits application form to facilitate their compliance with the formal application requirements. *See Servello v. Derwinski,* 3 Vet.App. 196, 200 (1992) (one-year filing period for filing formal claim after informal claim is filed "did not begin to run" where VA did not send formal application); *Quarles,* 3 Vet. App. at 137, (same); *see also Hamilton,* 4 Vet.App. at 544–45 (waiving formal application requirement because of "VA's failure to comply with the section 3.155(a) requirement to send . . . formal application forms" after informal claim was filed). Appellant Oseo argued that, under 38 U.S.C. § 7722 and the Court's holding in *Smith (Edward F.) v. Derwinski,* 2 Vet.App. 429 (1992), the Secretary is obligated to provide notice to potential accrued-benefits claimants when the veteran-appellant dies while an appeal is pending in the Court. Appellant Oseo's Mem. at 24–28. The Court notes the Secretary's contention that he is obligated upon a veteran's death to notify potential accrued-benefits claimants of the potential for such eligibility only if (1) the veteran died in service, (2) the veteran's death might have been service connected, (3) the veteran ever received VA compensation or pension; or (4) a review of the file "indicates that accrued benefits are due and payable". Secretary's Mem. at 22; *see also* VA ADJUDICATION PROCEDURE MANU-

AL, M21–1 [hereinafter MANUAL M21–1], Part II., para. 5.29; Part III, para. 2.17b.

The fourth circumstance is, of course, tautological. In any event, the same obligation also attaches, under section 7722(d) ("[VA] shall provide, to the maximum extent possible, aid and assistance (including personal interviews) to members of the Armed Forces, veterans, and eligible dependents ... in the preparation and presentation of claims under the laws administered by [VA]"), when the veteran has a claim for compensation, pension, or other VA monetary benefits pending at the time of death, since the pendency of such a claim puts the Secretary on notice of a potential accrued-benefits claim if the veteran's claim should turn out to be meritorious. "[T]he Secretary has offered no argument that it was not reasonably possible for such assistance to have been provided [by VA] ... in a timely manner", that is, for VA to notify a potential accrued-benefits claimant at that point. *Smith*, 2 Vet.App. at 432–33.

This same analysis applies to the Secretary's obligation to notify potential accrued-benefits claimants when the veteran's death occurs while the veteran is appealing an adverse BVA decision to this Court. Immediately before the veteran's death, there was a pending VA-monetary-benefits claim as to which an accrued-benefits claimant, upon the veteran's death, will stand in the shoes of the deceased veteran under *Zevalkink*. The Secretary's citation to *Cerullo v. Derwinski*, 1 Vet.App. 195, 197, 201 (1991), for the apparent proposition that VA might lack jurisdiction to make such accrued-benefits notification is unpersuasive. That case dealt with the *jurisdiction of the Board* to adjudicate on reconsideration a claim after the Board's denial thereof had been timely appealed to this Court. It does no more than state the obvious to point out that notification is not adjudication. Although it has yet to be determined in the adjudication process whether the appellants qualify as accrued-benefits claimants, their status as *potential* accrued-benefits claimants entitles them to raise the assertions they do of injury to future accrued-benefits claims.

We thus turn to a discussion of the position these appellants occupy with respect to the veterans' underlying disability-compensation claims, provided, of course, that they subsequently qualify as accrued-benefits claimants. For the following reasons, we hold that the appellants have misread *Zevalkink* and that they do not have, even as potential accrued-benefits claimants, sufficient possibility of injury to be appellants here under section 7266(a) (be "adversely affected") or to have standing in general (have "suffered some actual or threatened injury") under *Valley Forge Christian College, supra*, and *Allen, supra*.

In *Zevalkink*, the Court concluded as to the position occupied by an accrued-benefits claimant upon the death of the veteran:

> What the law has given to the survivor is, basically, *the right to stand in the shoes of the veteran and pursue his claim after his death.* The only differences are that the law limits the survivor to one year's worth of those periodic monetary benefits to which the veteran was entitled at death and which were unpaid at the time of death and certain adjudication rules ... applicable to an accrued-benefits claim.

*Zevalkink*, 6 Vet.App. at 490 (emphasis added).

In *Zevalkink*, the veteran died after his original service-connection claim for kidney disorder, hypertension, myalgia, and arthritis had already been once finally disallowed and while a claim *to reopen* that denial was pending. The Court held that "a survivor's accrued-benefits claim asserting that the veteran's disorder was service connected necessarily incorporates any prior adjudications of the service-connection issue in claims brought by the veteran, because the accrued-benefits claim derives from the veteran's service-connection claim." *Zevalkink*, 6 Vet. App. at 492. The Court further held that under those circumstances "there must be new and material evidence before the accrued-benefits claim may be considered, just as would have been the case if the veteran had himself been re-presenting the compensation claim." *Ibid.* The Court later reiterated:

> Therefore, just as the veteran was required to submit new and material evidence in order to obtain reopening and

readjudication of his kidney claim during his lifetime, so there must be new and material evidence in order for the accrued-benefits claimant to obtain full adjudication of the accrued-benefits claim based upon "the same factual basis" as the veteran's denied service-connection claim.

*Zevalkink,* 6 Vet.App. at 492–93.

■■ Accordingly, *Zevalkink* established that an accrued-benefits claimant stands in the exact position vis-a-vis adjudication of the deceased veteran's underlying disability-compensation claim as did the veteran immediately prior to his or her death, including all evidentiary requirements then applicable to the veteran's underlying claim and all final rating decisions then in effect. In *Zevalkink,* this meant that the accrued-benefits claimant was required to pick up the veteran's claim to reopen the denial of service connection for kidney disease because the veteran, having been finally denied service connection by the Board in 1985, could have achieved service connection prior to his death only through a reopening supported by new and material evidence. (Indeed, the veteran in *Zevalkink* was pursuing just such a reopening on appeal to the Board when he died.)

■■ Appellant Landicho argues that 38 C.F.R. § 20.1106 (1993), which provides that "issues involved in a survivor's claim for death benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime", should be considered and applied in any future adjudication of her claim for accrued benefits. The appellant's argument was considered and rejected in *Zevalkink* when the Court sustained the Secretary's interpretation of § 20.1106 as not applicable to accrued benefits. *Zevalkink,* 6 Vet.App. at 491–92.

On the present facts, veteran Landicho at the time of his death was attempting to reopen his previously and finally denied claims for service connection for five conditions, and seeking a rating increase for his service-connected peptic ulcer. The adjudication of any accrued-benefits claim derived from these underlying disability-compensation claims of the veteran would pick up exactly where the veteran was in presenting any such underlying claim immediately prior

to his death, taking into account the effect of his having filed an NOA. Immediately before Mr. Landicho's death, the BVA decision that is the subject of this appeal had been rendered nonfinal by his timely filing of an NOA. *See Tobler v. Derwinski,* 2 Vet.App. 8, 11 (1991) ("appeal of a decision does suspend the finality of any judgment with respect to the parties to that case until the appeal is resolved"); *cf. Kenner v. Commissioner,* 387 F.2d 689, 690 (7th Cir.1968) ("[f]inality accrues promptly after the exhaustion of the possibilities of direct review"); *Breslow v. Derwinski,* 1 Vet.App. 359, 363 (1991) (Steinberg, J., concurring) (noting that while a motion to reconsider "is pending at the BVA the initial BVA decision remains in effect, even though its finality is abated, *until* it is superseded by another 'final' BVA decision").

Additionally, the underlying RO decision had been subsumed in the BVA decision here on appeal, *see* 38 C.F.R. § 20.1104 (1993) (BVA decision affirming RO decision subsumes the latter decision); *Olson v. Brown,* 5 Vet.App. 430, 432–33 (1993) (same); *cf.* VA. Gen.Coun.Prec. 5–92 (Mar. 4, 1992) (holding that the BVA has the authority to determine on a de novo basis whether new and material evidence existed to reopen a claim, notwithstanding the contrary determination (favorable to the appellant) and adjudication on the merits by the RO). Moreover, the BVA decision could no longer serve any purpose in the administrative adjudication process because the veteran's disability-compensation claim had died with him, just as did the veteran's underlying disability-compensation claims (see discussion in part II.A.1., above).

Hence, because the August 1990 BVA decision, having subsumed the unfavorable RO decisions, was in a state of nonfinality at the date of the veteran appellant's death, and because that decision could no longer serve any adjudicatory purpose since the veteran's claims had died with him, that decision was, therefore, rendered without force or effect by his death—meaning that it then became a nullity. (That BVA decision thus could not be an "existing ... decision" within the meaning of section 5121(a)'s alternative basis for determining accrued benefits.) Any ac-

crued-benefits claimant standing in veteran Landicho's shoes would be presenting, based on evidence in the file at date of death, a claim to reopen as to the disability-compensation claims for the five conditions and an original claim as to the increased-rating claim, which is itself an original claim, *see Proscelle v. Derwinski*, 2 Vet.App. 629, 631–32 (1992), just as was the veteran himself at his death.

■ Accordingly, the widow Landicho, if she qualifies as an accrued-benefits claimant, may receive a merits adjudication of her accrued-benefits claim derived from the veteran's underlying disability-compensation claim (1) for hypertensive heart disease and beriberi, only if there is new and material evidence subsequent to the BVA's July 1985 final denial of his disability-compensation claim for hypertensive heart disease and beriberi; (2) for hemorrhoids and goiter, only if there is new and material evidence subsequent to the RO's 1971 final disallowance of his disability-compensation claims for hemorrhoids and goiter; and (3) for arthritis/rheumatism, only if there is new and material evidence subsequent to the RO's 1982 final disallowance of the veteran's disability-compensation claim for arthritis/rheumatism. *See Zevalkink*, 6 Vet.App. at 492–93. "[W]hen [such a] reopening is sought as part of an accrued-benefits claim under 38 U.S.C. § 5121(a), the new and material evidence must have been in the veteran's file at time of death or be deemed to have been so under *Hayes [v. Brown*, 4 Vet.App. 353 (1993)]." *Id.* at 493. On the other hand, no new and material evidence would be required for an accrued-benefits claim derived from the veteran's original claim for an increased rating for a peptic ulcer.

■ The same analysis applies to the substituted appellant Oseo's original claim for service connection for pulmonary tuberculosis, including any contention he seeks to make of a failure to assist him or the veteran under the Secretary's statutory duty in 38 U.S.C. § 5107(a) to assist VA claimants "in developing the facts pertinent to the claim". The adjudication of any accrued-benefits claim derived from the veteran's original disability-compensation claim for pulmonary tu-

berculosis would pick up exactly where the veteran was in presenting the underlying claim immediately prior to his death, taking into account the effect of his having filed an NOA. Immediately before the veteran Oseo's death, the 1991 final BVA decision, denying entitlement to service connection for pulmonary tuberculosis, that is the subject of this appeal, became nonfinal by virtue of his timely filing of an NOA and that decision was rendered a nullity by his death. Any accrued-benefits claimant standing in his shoes, pursuant to *Zevalkink*, would be presenting an original claim as to the disability-compensation claim for pulmonary tuberculosis.

The Court's holding in *Zevalkink* would impose no requirement, as the appellants appear to have misapprehended, for there to be new and material evidence as to these ***original*** claims if either appellant qualifies as an accrued-benefits claimant. The task of such a claimant will be only to show entitlement to disability compensation "based on evidence in the file at [the veteran's] date of death ... and due and unpaid for a period not to exceed one year [prior to death]". 38 U.S.C. § 5121(a). *See Hayes*, 4 Vet.App. at 360–61 (permitting consideration of evidence deemed constructively in the file at date of death). Because each of the BVA decisions in these two appeals has been rendered a nullity, those decisions pose no actual or threatened injury to the appellants as potential accrued-benefits, and these appellants are thus also not "adversely affected" by those decisions for purposes of maintaining an appeal under 38 U.S.C. § 7266(a). Accordingly, they have no standing to carry on these appeals, and the Court has no jurisdiction to decide the merits of the underlying disability-compensation claims. The Court notes, however, that although the appellants' asserted injury is not being redressed by the requested relief, the effect of the Court's holding that the BVA decisions appealed here became a nullity upon the deaths of the veteran appellants has afforded the appellants incidental relief.

***3. Remedy:*** For the reasons set forth above, we have concluded that this Court does not have jurisdiction to decide the merits of the underlying disability-compensation

claims (the "relief" sought by appellants). Another adjudicative proceeding (on an accrued-benefits claim) is required in order to provide that relief. Because these appeals have become moot, the appropriate course is to vacate the BVA and RO decisions. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950) (noting that the "established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss"); *see also Radiofone, Inc. v. FCC*, 759 F.2d 936, 937–38 (D.C.Cir. 1985) (holding that the case was moot when corporate subject of a declaratory ruling went out of business, and vacating the agency's order). The Supreme Court in *Munsingwear* explained the purpose for vacating a judgment when a case has become moot: "[I]t is commonly utilized in precisely this situation to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." *Munsingwear*, 340 U.S. at 41, 71 S.Ct. at 107.

### III. Court Rule Amendment

In light of the above analysis, and following the procedure established in *Stillwell v. Brown*, 6 Vet.App. 291, 300 (1994) ("en banc Court . . . contemporaneously with the issuance of [its] decision . . . issu[ed] an order to rectify" the invalidity of "the Court's existing practice under Rules 36(b) and 39(a)" by amending the rules accordingly); Misc. Order No. 2–94 (Mar. 11, 1994), the Court has today issued an order (Misc. No. 5–94) amending its Rule 43(a) so as to read (adding the material in boldface italics and deleting the material in brackets):

### RULE 43. SUBSTITUTION OF PARTIES

(a) **Death of a Party.**

(1) Before Notice of Appeal. If a party entitled to appeal dies before filing a Notice of Appeal, the Notice of Appeal may, *to the extent permitted by law,* be filed within the time limit in Rule 4 [by any person claiming entitlement to accrued benefits under 38 U.S.C. § 5121(a),] by the personal representative of the deceased party's estate, by any other appropriate person, or, if there is no such person, by the party's representative of record before the Board.

(2) After Notice of Appeal. If a party dies after a Notice of Appeal is filed or while a proceeding is pending in this Court, [any person claiming entitlement to accrued benefits under 38 U.S.C. § 5121(a),] the personal representative of the deceased party's estate[,] or any other appropriate person may, *to the extent permitted by law,* be substituted as a party on motion by such person or by any party. If no such person exists, any party may suggest the death on the record and proceedings will then be as the Court directs.

### IV. Conclusion

In view of the foregoing discussion and upon consideration of the pleadings and oral arguments of the parties, to all of whom the Court is indebted for the high quality of their presentations, the Court grants the Secretary's motion for reconsideration in *Landicho* and grants in part the Secretary's motion to dismiss as to both the appellants. The Court holds that each appellant was improperly substituted to carry on the appeals of the deceased veterans in this Court and that both appeals must, therefore, be dismissed. The Court further holds that the Board's August 27, 1990, decision as to veteran Landicho and its September 19, 1991, decision as to veteran Oseo were not final immediately before the respective veterans' deaths because an NOA had been filed with this Court, *see Tobler, supra; cf. Kenner, supra;* that the underlying RO decisions are likewise not final because the BVA decisions had subsumed them; *see Olson, supra;* and that the veterans' deaths rendered the BVA decisions no longer of force or effect and therefore nullities. *See Munsingwear, supra.* Accordingly, in order to ensure that the two BVA decisions and the underlying RO decisions will have no preclusive effect in the adjudication of any accrued-benefits claims derived from the respective veterans' entitlements, the Court vacates the Board's August 27,

1990, and September 19, 1991, decisions and directs the Board to vacate the respective March 1989 and April 1991 RO decisions in these cases. *See* 38 U.S.C. § 7252(a); *cf. Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993). Because these appeals have become moot by virtue of the deaths of the original veteran appellants, the appeals are each dismissed. *See Munsingwear, supra.*

The Court expresses its gratitude to the parties for the high quality of their representation in these appeals.

VACATED; APPEALS DISMISSED.