# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 02-0399(E)

FRANCIS P. SERRA, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellant's Application for Attorney Fees and Expenses

(Decided     August 5, 2005   )

*Clark C. Evans*, of North Little Rock, Arkansas, was on the pleadings for the appellant.

*Tim S. McLain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *John D. McNamee*, Acting Deputy Assistant General Counsel; and *Rebecca A. Baird*, all of Washington, D.C., were on the pleading for the appellee.

Before IVERS, *Chief Judge*, and GREENE and HAGEL, *Judges*.

IVERS, *Chief Judge*: Before the Court is Rhonda Serra's application for attorney fees and expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), in the amount of $11,465.40.  Also before the Court is her "Motion to Substitute a Party," the Secretary's "Motion to Recall Mandate," and two supplemental EAJA applications.  For the reasons set forth below, the Court will deny the motion to substitute, grant the motion to recall mandate, and deny the EAJA application and the supplemental applications.

## I.  BACKGROUND

A December 4, 2001, decision of the Board of Veterans' Appeals (Board or BVA) denied the appellant, Francis Serra, entitlement to an effective date prior to June 23, 1997, for an award of service connection for post-traumatic stress disorder (PTSD).  On March 19, 2003, the Court issued a single-judge order vacating the Board decision and remanding the matter for readjudication

pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000). Judgment was entered on April 10, 2003.

On June 5, 2003, the appellant died. On June 9, 2003, the Secretary, unaware of the appellant's death, appealed this Court's March 19, 2003, decision to the United States Court of Appeals for the Federal Circuit (Federal Circuit). The Secretary later filed a motion to dismiss the appeal, and on April 23, 2004, the Federal Circuit granted his motion. Mandate of this Court issued on April 26, 2004.

On May 7, 2004, Mrs. Serra, the appellant's widow, through counsel, filed an opposed motion to substitute herself for the appellant for EAJA purposes pursuant to Rule 43(a)(2) of this Court's Rules of Practice and Procedure (Rules). On May 11, 2004, she filed an EAJA application. In the motion to substitute, counsel states that he learned of the appellant's death "[w]hile this matter was pending on appeal before the [Federal Circuit]," which indicates that he was informed of the appellant's death at some point between June 9, 2003, the date of the Secretary's appeal to the Federal Circuit, and April 23, 2004, the date of the Federal Circuit's dismissal of the appeal. Motion to Substitute at 1. Counsel argues: "Where the Court has jurisdiction over a proceeding in which all matters except an EAJA application have been finally concluded, the death of the appellant does not preclude the Court from disposing of the application for EAJA attorney's fees." Motion to Substitute at 2; *see Cohen v. Brown*, 8 Vet.App. 5 (1995).

On May 24, 2004, the Secretary filed a motion to recall the April 26, 2004, mandate of the Court, to vacate the December 4, 2001, Board decision, and to dismiss the appeal because the appellant died while the appeal was pending before this Court. The Secretary argues that the underlying appeal should be dismissed pursuant to *Landicho v. Brown*, 7 Vet.App. 42, 46-49 (1994), in which the Court held that substitution by a party claiming accrued benefits under 38 U.S.C. § 5121(a) is not permissible in this Court when an appellant dies while the denial by the Board of the appellant's claim for disability compensation under chapter 11 of title 38, U.S. Code, is pending here on appeal. *See Zevalkink v. Brown*, 102 F.3d 1236, 1243-44 (Fed. Cir. 1996) (expressly agreeing with this Court's *Landicho* holding); *see also Swanson v. West*, 13 Vet.App. 197 (1999). According to the Secretary, appellant's counsel notified him of the appellant's death "on or about May 6, 2004." Secretary's Opposed Motion to Recall Mandate at 2. Thus, appellant's counsel waited until after

mandate issued to inform the Secretary of the appellant's death.

On May 28, 2004, Rhonda Serra filed an "Opposition to Recall of the Mandate," stating that her intent was to substitute for the limited purpose of pursuing EAJA fees. On May 29, 2004, she filed a supplemental EAJA application. In her opposition to recall of the mandate, she argues that there is a difference between a case where the appellant dies *before* the Court has rendered a decision, and where the appellant, as here, dies *after* the Court has rendered a decision. She also argues that the decision to dismiss is discretionary. She acknowledges *Swanson, supra*, where the Court found that the appellant's death, coming one day prior to the issuance of an opinion, served to moot the appeal, but she noted that the Court in *Swanson* stated that "[t]he situation in this case is arguably different from the question that would be presented had the appellant died after the opinion had been issued–either before the judgment, or after the judgment but before the mandate had issued." *Swanson*, 13 Vet.App. at 198. Finally, she asserts that issuance of mandate is merely ministerial, as is stated in Rule 41(a) of this Court's Rules.

On June 10, 2004, the Secretary filed a response to the EAJA application, arguing for dismissal based on lack of jurisdiction. The Secretary argues that the appeal became moot by virtue of the appellant's death, and therefore it should be dismissed. Furthermore he argues that, as a result, the appellant is no longer a prevailing party and the EAJA application should be dismissed.

On July 13, 2004, this case was submitted to a panel. On July 22, 2004, the Secretary filed an opposed motion to file a supplemental response to Mrs. Serra's EAJA application. On September 1, 2004, the Court granted the Secretary's motion, and asked for supplemental responses from both parties.

The Secretary responded on September 8, 2004. He agrees that mandate is ministerial. However, he states that this does not make mandate pointless or insignificant. He also points out that *Cohen, supra*, which Mrs. Serra cites for its allowance of substitution for EAJA purposes, is inapposite because it involved a case where mandate had already issued before the appellant died. The Secretary goes on to express his sympathy for appellant's counsel, acknowledging the work that he did, and the favorable judgment he received. However, he argues that the Court should dismiss the appeal in order to ensure that the Board's decision has no preclusive effect on any accrued benefits claim brought by Mrs. Serra. Finally, the Secretary cites *Sagnella v. Principi*, 15 Vet.App.

3

242 (2001), in which the Court held that, when an appellant dies before mandate issues, the appropriate remedy is to dismiss the appeal for lack of jurisdiction.

Mrs. Serra filed a reply on September 23, 2004, pointing out that she is not pursuing accrued benefits, but EAJA fees. She argues that, contrary to the Secretary's contentions, the Court does have jurisdiction to consider the application. She takes issue with the Secretary's citation to *Sagnella*, arguing that that case is different from the present one because *Sagnella* involved a question of accrued benefits while this one involves EAJA fees. On September 27, 2004, she submitted a second supplemental EAJA application.

## II. ANALYSIS

We have before us five matters to address: The Motion to Substitute a Party for EAJA purposes, the Secretary's Motion to Recall Mandate, the EAJA application, and two supplemental EAJA applications. With respect to the two supplemental EAJA applications, Rule 39(d)(1) of the Court's Rules of Practice and Procedure (Rules) states: "[A] party whose [EAJA application] has been granted in whole or in part may, not later than 20 days after the Court action granting such application, file a supplemental application for attorney fees and other expenses." Because no application has been granted, the supplemental EAJA applications cannot be dealt with initially; they are completely dependent upon the status of the initial EAJA application. Likewise, with respect to the motion for substitution, it obviously is dependent upon the status of the EAJA application, and cannot be considered initially. Finally, the EAJA application itself is completely dependent upon the status of the underlying case, because it is to be filed "not later than 30 days *after the Court's judgment becomes final pursuant to 38 U.S.C. § 7291(a)* (which occurs 60 days after entry of judgment under Rule 36) or, consistent with Rule 41(b), upon the issuance of an order on consent dismissing, terminating, or remanding a case." Rule 39(a) (emphasis added).

The only portion of the case before us that can be considered initially, and in conjunction with the underlying case, is the Secretary's Motion to Recall Mandate, and that is how we will begin our analysis. We will then analyze the EAJA application, and the supplemental applications, with respect to the underlying case. Finally, we will look at the law of substitution of parties.

A. The Situation Absent the EAJA Submissions

4

We must first examine the status of the underlying case. The Secretary challenges the viability of the underlying case in his Motion to Recall Mandate. Recall of mandate is not ordinarily allowed. However, a court has the power to set aside any judgment and to recall mandate, where necessary to protect the integrity of its own processes. *See Sargent v. Columbia Forest Prods., Inc.,* 75 F.3d 86, 89 (2nd Cir. 1996); *but see Boston and Me. Corp. v. Town of Hampton,* 7 F.3d 281, 282-83 (1st Cir. 1993) (questioning the "inherent authority" to recall a mandate). The exercise of this power is within the discretion of the court. *Zipfel v. Halliburton Co.,* 861 F.2d 565, 567 (9th Cir. 1988). However, such discretion may be exercised only for good cause or to prevent injustice, and only when "unusual circumstances exist sufficient to justify modification or recall of a prior judgment." *Ibid.* "Even if authority to recall a mandate still exists, it 'should be exercised sparingly, and only upon a showing of exceptional circumstances.'" *Boston and Me. Corp.*, 7 F.3d at 283 (citations omitted). Under the strict standards governing the exercise of power to recall a mandate, the mere questioning of a court's reasoning, construction, or application of the relevant law is insufficient by itself to justify the recall of a mandate. *See Sargent,* 75 F.3d at 90 (citing *Hines v. Royal Indem. Co.,* 253 F.2d 111, 114 (6th Cir. 1958)); *Boston and Maine Corp., supra*.

Among the "exceptional circumstances" justifying a court's exercise of the power to recall a mandate are the discovery that the judgment was obtained by fraud, *see Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248-50 (1944), and the correction of clerical mistakes and judicial oversights, *see, e.g., Patterson v. Crabb,* 904 F.2d 1179, 1180 (7th Cir. 1990) (recalling its mandate where its dismissal of petitioner's claim was based on the absence of a required final order, which had been entered but was overlooked by court); *Lamb v. Farmers Ins. Co., Inc.,* 586 F.2d 96, 97 (8th Cir. 1978) (recalling mandate because error in court clerk's office caused court's erroneous decision); *Verrilli v. City of Concord,* 557 F.2d 664, 665 (9th Cir. 1977) (recalling mandate because court simply overlooked an existing statute applicable to the case). "Another example of an 'exceptional circumstance' is where it was discovered that the petitioner had died *prior to the issuance of the mandate*." *McNaron v. Brown*, 10 Vet.App. 61 (1997) (emphasis added); s*ee Keel v. Brown*, 9 Vet.App. 124 (1996) (per curiam order); *see also Ferrell v. Estelle*, 573 F.2d 867, 868 (5th Cir. 1978).

Mrs. Serra "concedes that the Court has found that the death of an appellant before this Court

has issued its decision is such an 'unusual circumstance' so as to justify the extraordinary measure of recall." Reply to Secretary's Supplemental EAJA Response at 3. The issue then is whether or not the case should be dismissed because the appellant died after a decision but before mandate. Without the EAJA application in this case, we would be faced with the situation addressed in *Landicho* and numerous other cases before this Court, where a case is dismissed when it is found that the appellant died while the case was pending. The Court held in *Landicho* that substitution by a party claiming accrued benefits under 38 U.S.C. § 5121(a) is not permissible in this Court when an appellant dies while the denial by the Board of his claim for disability compensation under chapter 11 of title 38, U.S. Code, is pending here on appeal. *See Zevalkink v. Brown*, 102 F.3d at 1243-44. Under such circumstances, the appropriate remedy is to vacate the Board decision and to dismiss the appeal. *Landicho*, 7 Vet.App. at 54. Vacating the Board decision ensures that it and the underlying RO decision(s) will have no preclusive effect in the adjudication of any accrued-benefits claims derived from the veteran's entitlements. It also nullifies the previous merits adjudication by the RO because that decision was subsumed in the Board decision. *See Yoma v. Brown*, 8 Vet.App. 298 (1995) (per curiam order) (relying on *Robinette v. Brown*, 8 Vet.App. 69, 80 (1995)); *see also Hudgins v. Brown*, 8 Vet.App. 365, 368 (1995) (per curiam order). Because an appeal becomes moot by virtue of the appellant's death, the appeal is dismissed. *See Landicho*, 7 Vet.App. at 53-54.

Mrs. Serra does not take issue with this process in cases where the appellant's death precedes a decision of this Court. She does, however, contest that process in cases where the appellant dies after a decision is tendered but before mandate issues. As stated above, she cites, as the basis for his argument, *Swanson*, which states: "The situation in this case is arguably different from the question that would be presented had the appellant died after the opinion had been issued – either before the judgment, or after the judgment but before the mandate had issued." *Swanson*, 13 Vet.App. at 198. She is correct to say that the situation is *arguably* different, and in fact, the situation *is* different. However, the difference may not lead to a different result. As stated above, the Court held in *Landicho* that substitution is not permissible when an appellant dies while his claim is pending here on appeal. The thrust of her argument appears to be that the case was somehow *not* pending because the Court had issued a decision. She says:

Certainly, this Court has ruled, beginning with *Landicho*, that the death of an

6

appellant while the appeal is pending before the Court moots the appeal. *Landicho v. Brown*, 7 Vet.App. [at 47]. In that case, and others that followed, the Court vacated the BVA decisions on appeal. That is done to ensure the Board decision and the underlying RO decision(s) will have no preclusive effect in the adjudication of any accrued-benefits claims, under 38 U.S.C. § 5121, derived from the veteran's entitlements. *Id.* at 54-55. It is important to remember, however, that in *Landicho* the BVA decision was indeed pending on appeal, i.e., the Court had not ruled on the merits.

Opposition to Recall of the Mandate at 5. She defines "pending" as a situation where the Court has not ruled on the merits. She suggests that, once a decision of this Court has been issued, the case is no longer pending.

This Court has held that in a case in which a decision has been issued, but judgment has not been entered, the case is still pending. *See Taylor v. West*, 11 Vet.App. 206, 208 (1998) ("[A]ppellant's appeal was pending before the Court at the time of his death because judgment had not issued at that time and the Court's decision had thus not become binding on the parties and final."); *see also Bowers v. Brown*, 8 Vet.App. 25 (1995). Furthermore, as to when the death of the appellant occurs between judgment and mandate, the Court in *Sagnella* found that the case should be dismissed pursuant to *Landicho* because the case was still pending. The appellant in *Sagnella* argued that that case could "be distinguished from *Zevalkink* and *Landicho* because . . . the appellant did not die during the pendency of his appeal, but rather nine months after the Court awarded him an increase in benefits and subsequent to the Court's entry of judgment." *Sagnella*, 15 Vet.App. at 244. The Court was unpersuaded and it concluded that, because the appellant had died prior to final judgment, i.e., prior to mandate, his claims were, therefore, still pending, and they should be dismissed. Thus, it appears well settled that a case remains pending in this Court until mandate issues.

In addition, it may be helpful to take a closer look at how this Court has defined "pending." "In determining the plain meaning of statutory language, 'legislative purpose is expressed by the ordinary meaning of the words used.'" *Jones v. Brown*, 41 F.3d 634, 638 (Fed. Cir. 1994) (quoting *Ardestani v. INS*, 502 U.S. 129 (1991)); *see Brown v. Gardner*, 513 U.S. 115, 118 (1994). Pending is defined as "begun, but not yet completed; during; before the conclusion of; . . . in process of settlement or adjustment. . . . Thus, an action or suit is 'pending' from its inception until the rendition

of final judgment." BLACK'S LAW DICTIONARY 1134 (6th ed. 1990) [hereinafter BLACK'S]. The term "final judgment" is defined by EAJA as "a judgment that is final and not appealable." 28 U.S.C. § 2412 (d)(2)(G); *see* 38 U.S.C. § 7291(a) ("A decision of the United States Court of Veterans Appeals shall become final upon the expiration of the time allowed for filing . . . a notice of appeal from such decision, if no such notice is duly filed within such time."). So, as defined by this Court, BLACK'S, and our statutes, a case remains pending until final judgment, not merely until judgment.

Mrs. Serra acknowledges that mandate had not issued in the case, but she asserts that issuance of mandate is ministerial. She is absolutely correct. Rule 41(a) of this Court's Rules states that mandate is ministerial. The rule also states that mandate "is merely evidence that a judgment has become final." Rule 41(a). Thus, the only true purpose of mandate is to show that judgment has become final. As stated above, until judgment is final, the case remains pending. Therefore, because the case was pending at the time of the appellant's death, absent the EAJA application, this case would follow the reasoning, and the procedures, undertaken in *Landicho* and its progeny, and it would be dismissed.

The Court is compelled to note here that, by appellant's counsel's admission, he deferred notifying the Secretary of the appellant's death for a period of up to 11 months. In fact, it appears that he waited until after mandate issued in order to notify the Secretary. It appears that he may have waited until after mandate issued to inform the Secretary of the appellant's death in the hope that this case could then be characterized as one of substitution for EAJA purposes. Appellant's counsel presumably does not contest the likely fate of this case had he informed the Secretary of the appellant's death in a timely fashion. However, because he has submitted an EAJA application, it appears that he believes that that somehow alters the nature of the underlying case.

B. Whether the Application Changes the Outcome of the Case

Because an EAJA application has been filed, this matter can be characterized as an EAJA case, and we must address the application. However, unfortunately for Mrs. Serra, the EAJA application does not change the nature of the case, for the application is completely dependent upon the fate of the underlying case. As stated above, in Rule 39(a), an EAJA application must follow a final judgment in this Court. Also, to be eligible for an EAJA award, the applicant must file the application within the 30-day period set forth in 28 U.S.C. § 2412(d)(1)(B), and the application must

8

include (1) a showing that the applicant is a prevailing party; (2) a showing that he is a party eligible for an award under EAJA because his net worth does not exceed $2,000,000; (3) an allegation that the Secretary's position was not substantially justified; and (4) an itemized statement of the fees sought. 28 U.S.C. § 2412(d); *see Scarborough v. Principi,* 541 U.S. 401 (2004); *see also Sumner v. Principi*, 15 Vet.App. 256, 260 (2001) (en banc), *aff'd sub nom. Vaughn v. Principi*, 336 F.3d 1351 (Fed. Cir. 2003), *cert. denied*, 541 U.S. 987 (2004). The application was timely, and it included material addressing all of these requirements. However, because there is no final judgment in this case, the EAJA application cannot be granted. This Court has held that to be eligible for EAJA fees and expenses, an appellant must be a "prevailing party" and that, upon the recall of judgment and mandate and withdrawal of the Court's order in a particular case, there is no longer a decision of the Court in which the appellant could be said to be a prevailing party. *Kawad v. West*, 12 Vet.App. 61 (1998). As indicated above, the order must be withdrawn, and therefore, the appellant cannot be said to be a prevailing party.

## C. EAJA Law on Substitution

Finally, Mrs. Serra cites to cases supporting her contention that substitution for a deceased appellant is allowed for EAJA purposes. The primary case that she cites is *Cohen*, where substitution was allowed for EAJA purposes. In that case, the Court concluded that *Landicho* did not control its analysis. *See Cohen*, 8 Vet.App. at 7. It held that "the death of the appellant is not a jurisdictional bar to its consideration of an otherwise proper EAJA application, where the appellant had prevailed on the merits of the benefits claim prior to his death." *Id.* However, *Cohen* is not on point. In that case, not only had mandate already issued, but the EAJA application was also filed before the appellant died. Thus, unlike this case, judgment in the underlying case was final.

## III. CONCLUSION

Upon consideration of the foregoing, the Secretary's Motion to Recall Mandate is GRANTED, and the Court's April 26, 2004 mandate is recalled. The Court's March 19, 2003, order vacating the Board decision is REVOKED, and the December 4, 2001, Board decision is VACATED. The appeal is DISMISSED for lack of jurisdiction. Finally, the EAJA application, the Motion to Substitute, and the two supplemental EAJA applications are DENIED as moot.