KASOLD, Judge,
dissenting:
Once judgment becomes final, as it has here, a judicial opinion should be recalled “only for good cause or to prevent injustice, and only when unusual circumstances exist sufficient to justify modification or recall of a prior judgment.” McNaron v. Brown, 10 Vet.App. 61, 63 (1997) (internal quotations omitted and emphasis added); see also Greater Boston Television Corp. v. FCC, 463 F.2d 268, 277 (D.C.Cir.1971) (“The ‘good cause’ requisite for recall of mandate is the showing of need to avoid injustice.”). Although the majority is correct that McNaron states that the death of an appellant prior to the entry of mandate is such an exceptional circumstance, this is only part of the analysis.[2] Withdrawal of mandate requires not only an exceptional circumstance, but it is to be undertaken only to prevent injustice or for other good *96 cause, and the majority does not undertake this analysis. What is the good cause in this case or the injustice to be prevented? The underlying Board decision was vacated in the decision being withdrawn today, so the withdrawal action being taken, which includes another vacatur of the underlying Board decision, has the sole practical effect of withdrawing this case as precedent. But why do so?
“Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vaca-tur.” U.S. Bancorp Mortgage Co. v. Bonner Mall P’ship, 513 U.S. 18, 26, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) (citation omitted) (emphasis added); see also Morton v. Gober, 14 Vet.App. 174, 175 (2000) (citing public interest as a factor when considering whether to vacate a judgment). In the underlying precedential opinion, which is withdrawn today, the Court discussed the interplay of statute and regulation concerning the Secretary’s duty to notify claimants seeking benefits derived from service in the Philippine forces supporting the United States in World War II. Significantly, it established the need to notify such claimants how they might establish veteran status for VA benefits purposes. It now has been cited and relied upon in numerous cases. The public interest is not served by its withdrawal. It should be allowed to stand.
Moreover, procedurally, the Secretary’s litigation stance counsels against recalling mandate and withdrawing the Court’s opinion. The Court issued its opinion on August 5, 2005, and judgment was entered in due course on August 29. Thereafter, on September 6, Mrs. Pelea died, and her counsel so notified the Court and the Secretary of such on October 24. Four days after being notified, the Secretary nonetheless appealed to the Federal Circuit, and thereby divested the Court of jurisdiction. Although the Court lacked jurisdiction, on November 28 the Court received the Secretary’s motion to recall judgment and dismiss the appeal. On December 1, the Federal Circuit granted the parties’ joint motion to dismiss the Secretary’s appeal to that court, and the mandate of the Federal Circuit and of this Court was entered that same day.
For reasons known only to the parties, they agreed to have the matter dismissed without further action. The case was not remanded by the Federal Circuit with some direction to this Court. It was not dismissed for lack of jurisdiction. The Secretary did not seek to have this case vacated by the Federal Circuit, and that court did not do so. Having foregone additional relief while this matter was on appeal, we should not now grant what could have been sought at the time the case was dismissed by the Federal Circuit. See United States v. Munsingwear, 340 U.S. 36, 41, 71 S.Ct. 104, 95 L.Ed. 36 (1950) (rejecting request of United States to vacate a lower-court decision when United States “slept on its rights” and did not seek such relief when the matter was dismissed upon joint motion by U.S. Court of Appeals).
The recent decision in Serra v. Nicholson, 19 Vet.App. 268 (2005), wherein the Court withdrew mandate, is instructive in the sense that the Court considered the litigation status of the parties and the fact that the Secretary in that case was unaware at the time he filed an appeal with the Federal Circuit that the appellant had died. It also noted that counsel for the appellant deferred notifying the Secretary of his client’s death for up to 11 months and that it appeared counsel had waited until mandate issued for purposes of fur *97 thering an application for attorneys fees and expenses. Id. at 274-75. The case at bar has no such facts. Withdrawal of the Court’s decision is not in the public interest, it is not necessary to prevent injustice, and there is otherwise no good basis for doing so. See McNaron, supra.
Accordingly, I respectfully dissent.

. Although McNaron notes that the Court has found death to be an exceptional circumstance for considering withdrawal of mandate, it relies upon Keel v. Brown, 9 Vet.App. 124 (1996) [hereinafter Keel II] (explaining circumstances surrounding disposition of Keel v. Brown, 8 Vet.App. 84 (1996) [hereinafter Keel I]), for that proposition. However, neither Keel I nor Keel II discuss any exceptional circumstances or the considerations to be made when recalling mandate. In effect, McNaron provides a post hoc justification for the action taken in Keel I, with neither case undertaking the analysis required before mandate should be withdrawn based on the death of an appellant. The other cases upon which the majority relies — Zevalkink v. Brown, 102 F.3d 1236 (Fed.Cir.1996), Padgett v. Nicholson, 19 Vet.App. 334 (2005), Morton v. Gober, 14 Vet.App. 174 (2000), Erro v. Brown, 8 Vet.App. 500 (1996), and Landicho v. Brown, 7 Vet.App. 42 (1994) — are inapposite in that none of these cases involve the withdrawal of an opinion of the Court after entry of mandate.