# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-1244

MARY ANN TETEN, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellant's Application for Attorney Fees and Expenses

(Decided    May 13, 2002    )

*Robert A. Laughlin*, of Omaha, Nebraska, was on the pleadings for the appellant.

*John H. Thompson*, Acting General Counsel; *Ron Garvin*, Assistant General Counsel; *Michael A. Leonard*, Deputy Assistant General Counsel; and *Adam K. Llewellyn*, all of Washington, D.C., were on the pleadings for the appellee.

Before FARLEY, IVERS, and STEINBERG, *Judges.*

STEINBERG, *Judge*:  Before the Court is the appellant's November 9, 2000, application, through counsel, for attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA).  The Secretary filed a response, and the appellant filed a reply thereto. For the reasons that follow, the Court will grant in part the appellant's application.

## I. Background

The appellant, the widow of a veteran, through counsel, previously sought review of a May 1998 Board of Veterans' Appeals (BVA or Board) decision that dismissed for lack of legal merit a claim for Department of Veterans Affairs (VA) service connection for her deceased husband's kidney disorder for the purpose of accrued benefits under 38 U.S.C. § 5121.  Record (R.) at 3. That appeal to this Court followed a series of claims by the veteran (now deceased) and the appellant before a VA regional office (RO) and the BVA, as detailed in the Court's opinion in the merits decision.

*Teten v. West*, 13 Vet.App. 560, 560-62 (2000) [hereinafter *Teten II*]. In September 1990, the veteran filed his last appeal to the BVA (R. at 534), which the Board denied on April 19, 1991, for failure to present new and material evidence to reopen his previously and finally disallowed claim. R. at 43-47. Thereafter, he requested the Board's reconsideration (R. at 52-53), which was denied on July 1 and 18, 1991 (R. at 56). The veteran died later that month, on July 23, 1991 (R. at 72), after which the appellant filed a Notice of Appeal (NOA) on September 4, 1991, as to the April 1991 BVA decision.

On January 31, 1995, the Court dismissed that appeal, because it found that under *Landicho v. Brown*, 7 Vet.App. 42 (1994), substitution of parties was not permissible in this instance. *Teten v. Brown*, No. 91-1492, 1995 WL 59079 at *1 (Jan. 31, 1995) [hereinafter *Teten I*]. In that dismissal order, the Court vacated the April 1991 BVA decision, directed VA to vacate any underlying VARO decisions, and then noted that the purpose of that remedy was "to ensure that the BVA decision and the underlying RO decision will have no preclusive effect in the adjudication of any accrued-benefits claims derived from the veteran's entitlements". *Ibid.*

In April 1993, the appellant, as the veteran's surviving spouse, filed with an RO an application for, inter alia, accrued benefits (R. at 61-64); that claim was denied in July 1993 (R. at 75). In September 1995, the RO denied service connection for the veteran's cause of death and, inter alia, again denied the appellant's attendant claim for accrued benefits. Supplemental R. at 1-10. On appeal of that decision to the BVA, the Board in May 1998 denied accrued benefits, on the grounds that the appellant was ineligible because (1) the veteran's kidney disorder was not service connected at the time of his death and (2) a claim for VA service connection for that disorder was not pending at his death. R. at 6-7. The Board based its conclusion that the veteran had no claim pending at the time of his death on the fact that it had denied his motion for BVA reconsideration before he died. *Ibid*.

The Court, in a July 21, 2000, opinion, reversed the May 1998 BVA decision and remanded the matter for readjudication. *Teten II*, 13 Vet.App. at 563-64. In that underlying merits appeal, the appellant had argued, inter alia, that the Board had erred in determining that the veteran had no claim pending before VA at the time of his death. *Id*. at 562. In reversing the May 1998 BVA decision and remanding the matter for readjudication, the Court reasoned:

The Board . . . denied the appellant's accrued-benefits claim based on the Federal Circuit's holding in *Jones (Ethel)*, that "without the veteran having a claim pending at time of death, the surviving spouse has no claim upon which to derive . . . her own application" for accrued benefits, *Jones (Ethel)* [*v. West*], 136 F.3d [1296,] 1300 [(Fed.Cir. 1998), *cert. denied*, 525 U.S. 834 (1998)]. R. at 6. In that May 1998 BVA decision, the Board ***failed to apply or even mention this Court's January 1995 order that had vacated the April 1991 BVA decision*** (and consequently any underlying RO decision, *see Yoma v. Brown*, 8 Vet.App. 298, 299 (1995) (per curiam order)), ***upon which the veteran's motion for BVA reconsideration was based***. *Teten* [*I*], 1995 WL 59079, at *1; R. at 77-78. That 1995 Court order had vacated the April 1991 BVA decision in order "to ensure that the BVA decision [which had not become final upon the veteran's death] and the underlying RO decision [would] have no preclusive effect in the adjudication of any accrued-benefits claims derived from the veteran's entitlements." *Ibid*.; *see also Landicho* [*v. Brown*], 7 Vet.App. [42,] 53-54 [(1994)] (holding that, where veteran dies during pendency of claim, appropriate remedy is for Court to vacate BVA and RO decisions in order that those decisions will "pose no actual or threatened injury" to any accrued-benefits claimants); [(other citations omitted)].

In a recent opinion in *Kelsey v. West*, this Court held that, "where a veteran dies subsequent to a Board decision, but prior to filing an NOA . . . , there is no discernible basis for a different outcome" from the outcomes in *Zevalkink* [*v. Brown*, 102 F.3d 1236 (Fed.Cir. 1996)], *Swanson* [*v. West*, 13 Vet.App. 197 (1999) (per curiam order)], *Landicho*, [*supra*,] and *Smith (Irma)* [*v. Brown*, 10 Vet.App. 330 (1997)] . . . . *Kelsey*, 13 Vet.App. 437, 438 (2000) (per curiam order). We conclude that the situation in this case is no different from the situation in *Kelsey*. That is, even if the veteran had filed a motion for BVA reconsideration, he "[d]ied subsequent to a Board decision, but prior to filing an NOA", *Kelsey*, *supra*, and before the NOA-filing period had expired. *See Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991) (holding that NOA is timely and Court has jurisdiction to hear appeal where appellant has (1) filed motion for BVA reconsideration within 120 days after mailing date of notice of underlying final BVA decision ***and also*** (2) filed NOA within 120 days after BVA Chairman has mailed notice of denial of reconsideration motion). Accordingly, we conclude that the veteran's claim remained pending at the time of his death, because the 120-day period within which he could file an NOA as to the BVA decision

had not yet run. [(Citations omitted).] The Court thus holds that the May 1998 BVA decision erred in failing to adjudicate the appellant's claim for accrued benefits.

*Id*. at 562-63 (emphasis added in first two places). The *Teten II* opinion thus enunciated two holdings: First, the Court held that the BVA erred in its 1998 decision in failing "to apply or even mention this Court's January 1995 order that had vacated the April 1991 BVA decision". *Id*. at 562. Second, the Court held that even before the Court issued its 1995 order, the BVA decision was not final because the appellant had died before the expiration of the 120-day judicial-appeal period, thereby causing his claim to remain open. *Id.* at 563.

On November 9, 2000, the appellant, through counsel, filed an EAJA application for $9,919.18 in attorney fees and expenses. On February 8, 2001, the Secretary filed a response in opposition to the appellant's application, to which the appellant filed a reply on May 7, 2001. In his response, the Secretary concedes that this Court has jurisdiction to consider the appellant's EAJA application (Response (Resp.) at 1-2), that the appellant is a "prevailing party", that there are no "special circumstances" that make an EAJA award unjust, and that the appellant's application was timely filed (Resp. at 3). The Secretary disputes only the appellant's allegation that the position of the Secretary was not substantially justified; the Secretary argues that his position at both the litigation and administrative stages was reasonable because he "clearly relied upon then-current law" that was "effectively" changed when, subsequent to issuance of the May 1998 BVA decision, this Court decided *Kelsey*, *supra*. Resp. at 5. According to the Secretary, *Kelsey*'s "landmark holding" altered the "long recognized" principle that "veteran[s'] claims for compensation do not survive their deaths". Resp. at 3, 5. In his reply, the appellant argues: (1) The Secretary misapprehends *Kelsey* in that that case involves no "landmark holding" amounting to a change in the law (Reply at 5); (2) in light of the caselaw existing at the time of the May 1998 BVA decision, together with the plain language of the Court's January 1995 order (R. at 77 (quoted above)), the Secretary's position at the administrative stage was unjustified (Reply at 5-6); and (3) the Secretary's position at the litigation stage before this Court was also unjustified because the Secretary "never acknowledged [that] the Board ignored *Landicho* or the Court's [o]rder of January 31, 1995" (Reply at 7).

On February 21, 2002, the Court received from the appellant a pleading entitled "Appellant's Appendice/Response Concerning Remand Pursuant to E.A.J.A." Therein the appellant informed the

Court that, pursuant to our decision in *Teten II*, the RO had awarded accrued benefits to her on November 8, 2001, based on a finding of service connection for the veteran's kidney disorder, rated at 10% disabling.

## II. Analysis

This Court has jurisdiction to award reasonable attorney fees and expenses pursuant to 28 U.S.C. § 2412(d)(2)(F). The appellant's November 9, 2000, EAJA application was filed within the 30-day EAJA application period set forth in 28 U.S.C. § 2412(d)(1)(B) and satisfies all EAJA jurisdictional and content requirements, because the application contains the following: (1) A showing that, by virtue of the Court's remand, the appellant is a prevailing party within the meaning of the EAJA; (2) a showing that she is a party eligible for an award under the EAJA because her net worth does not exceed $2,000,000; (3) an allegation that the position of the Secretary was not substantially justified; and (4) an itemized fee statement. *See* 28 U.S.C. § 2412(d)(1)(A), (1)(B), (2)(B); *Scarborough v. Principi*, 273 F.3d 1087, 1092-93 (Fed. Cir. 2001).

"Once an appellant has alleged a lack of substantial justification, the burden shifts to the Secretary to prove that VA was substantially justified in [both] its administrative and litigation positions." *Cullens v. Gober*, 14 Vet.App. 234, 237 (2001) (en banc) (citing *Locher v. Brown*, 9 Vet.App. 535, 537 (1996)). This Court has established the following standard to determine whether the Secretary has carried that burden:

> [T]he VA must demonstrate the reasonableness, in law and fact, of the position of the VA in a matter before the Court, and of the action or failure to act by the VA in a matter before the VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court.

*Stillwell v. Brown*, 6 Vet.App. 291, 302 (1994). Furthermore, "reasonableness is determined by the totality of the circumstances, and not by any single-factor approach." *Ibid*. (citing *Chiu v. United States*, 948 F.2d 711, 715 n.4 (Fed.Cir. 1991)).

### *A. Background of Litigation*

At this point, we believe that it is helpful to an understanding of the positions of the parties, of the Court's prior actions in this case, and of our disposition of the pending EAJA application to reiterate the chronology of pertinent events and their significance in terms of the Court's ruling in *Teten II*.

The veteran's claim to reopen as to his previously and finally disallowed service-connection claim was, as a matter of law, pending at his death on July 23, 1991, by virtue of two separate factors. *See Teten II*, 13 Vet.App. at 563 (concluding: "In view of all the foregoing analyses, the Court will reverse the May 1998 BVA decision and remand that matter for the Board to adjudicate the merits of the accrued-benefits claim."). First, at the time of his death, the BVA decision had not become final, because the time for him to file a timely appeal to this Court under 38 U.S.C. § 7266(a) and *Rosler*, *supra*, had not expired. From that date of death in July 1991 to the Court's January 1995 order vacating that BVA decision, the denial of the appellant's claim remained in a state of nonfinality. Second, on January 31, 1995, that BVA decision that had denied that claim to reopen was vacated, and this Court's January 1995 order directed VA to vacate any underlying RO decision (the January 1995 order also dismissed the veteran's appeal from VA's 1991 denial of reopening). That order thus, in effect, nullified those prior RO and BVA denials then on appeal and reinstated the claim to reopen as of the veteran's death. Hence, from April 19, 1991, to January 30, 1995, the finality of the BVA decision was in a state of suspension, and, as of January 31, 1995, that BVA decision was nullified, as were the underlying RO decisions; that nullification was retrospective, thus rendering the situation as though the BVA and RO decisions had never been issued and restoring the pendency of the veteran's claim to reopen his kidney-disorder service-connection claim.

The Court's jurisdiction in 1995 to order the vacaturs derived from the appellant's September 1991 NOA, which she filed on her husband's behalf within 120 days after the BVA Chairman's July 1991 denial of her husband's motion for reconsideration. (At that time, Rule 43(a)(1) of the Court's Rules of Procedure and Practice authorized her to file such an NOA, *see Landicho* 7 Vet.App. at 47-48 (explaining that deceased veteran's spouse could not be permitted to substitute for veteran for purposes of adjudication of claims absent a disability-compensation claim or accrued-benefits claim

currently properly pending before Court).)  That filing within the judicial-appeal period thus tolled that 120-day period for filing an NOA in this Court under 38 U.S.C. § 7266(a).  *See Rosler*, *supra* (holding that filing motion for reconsideration with BVA during 120-day judicial appeal period abates finality of initial BVA decision, and new judicial-appeal period begins to run on date BVA mails to claimant notice of a decision on that reconsideration motion).  The Court acted sequentially in 1995 by first vacating the April 1991 BVA decision under *Landicho*, 7 Vet.App. at 44, and then dismissing the appeal from the BVA decision because there was no longer any BVA decision to appeal.  The April 1991 BVA decision was in effect (although not final) until the Court's 1995 order vacated it retrospectively and thus formed the basis for the Court's exercise of appellate jurisdiction to issue the January 1995 order, in which the Court ultimately decided that it had no jurisdiction over the appeal as to the merits of the April 1991 BVA decision.  Hence, in *Teten II*, *supra*, the Court held under *Landicho*, *supra*, that the veteran's claim was reinstated by, and was thus pending upon, his death and that the BVA had thus erred in May 1998 when it found, on the basis that the veteran's claim to reopen was not pending at his death, that the appellant did not have a viable accrued-benefits claim.

### B.  Substantial Justification

The Secretary argues that his positions at the administrative and litigation levels were both substantially justified because he reasonably relied upon then-existing precedent that was subsequently altered by the Court's opinion in *Kelsey*, *supra*, decided on April 14, 2000.  Even if we were to assume that the Secretary is correct in his characterization of the holding in *Kelsey*, we conclude, for the reasons set forth below, that the Secretary has still not carried his burden to prove that his position at the administrative stage was substantially justified, *see Cullens* and *Locher*, both *supra*.

At the administrative stage, the Secretary, through the Board, took the position that the deceased veteran had no claim pending at his death and that, therefore, the appellant's claim for accrued benefits lacked legal merit.  R. at 6-7 (citing *Jones (Ethel)*, *supra*).  As described above, the Court in *Teten II* made two holdings as to the May 1998 Board decision:  One regarding the Board's failure to deal with the *Landicho* effect of the Court's January 1995 order, and a second regarding the Board's failure to recognize that under *Rosler*, *supra*, the BVA decision had not become final at

7

the veteran's death. As to the latter matter, we agree with the Secretary that, in effect, it was not unreasonable for the Board not to have anticipated that the Court would rule in *Teten II* that the BVA decision had never become final because it was still appealable at the veteran's death. To the extent that such a holding was foreshadowed by *Kesley*, *supra*, that opinion was issued over two years after the Board's May 1998 decision on appeal. The Court notes, however, that that holding was necessary only to establish that the Court in 1995 had indeed acted with jurisdiction over the April 1991 BVA decision that the Court then vacated (because that decision was still not final as of January 1995).

The key holding in *Teten II* concerned the effect of the Board's complete failure to recognize or discuss in any way the fact that in January 1995 this Court (1) had vacated the April 1991 BVA decision that denied the veteran's claim to reopen as to his previously and finally disallowed claim for service connection for his kidney disorder and (2) had directed VA to vacate any underlying RO decisions. *Teten II*, 13 Vet.App. at 562 ("the Board failed to apply or even mention this Court's January 1995 order that had vacated the April 1991 BVA decision"); *Teten I*, *supra*; R. at 77. The Court stated expressly in its 1995 order that it was taking those actions in order "to ensure that the BVA decision and the underlying RO decision will have no preclusive effect in the adjudication of any accrued-benefits claims derived from the veteran's entitlements". *Teten I*, *supra*. Therefore, the BVA was not substantially justified at the administrative level because it ignored completely (1) the Court's 1995 nullification of the BVA and RO denials and (2) the inevitable effect of those nullifications – effectuated expressly to remove those adjudications as any impediment to "the adjudication of any accrued-benefits claims" – in rendering the veteran's claim, as a matter of law, still pending at his death. The Board merely had to look at that 1995 Court order to assess whether the veteran's claim was pending. The Board's utter failure to examine the status of the veteran's claim made the Secretary's position unreasonable. In other words, it was unreasonable for the BVA, in rendering its 1998 decision, to rely specifically on the continued viability of the 1991 BVA decision, insofar as that 1991 decision precluded a claim from being pending at the time of the veteran's death, yet fail to consider that the BVA decision was itself a nullity based on the Court's 1995 order. Because we hold that the Secretary was not substantially justified at the administrative stage, *see Stillwell*, 6 Vet.App. at 302, we need not and do not address the question of the

8

justification for his position at the litigation stage. *See Jackson v. West*, 12 Vet.App. 422, 429 (1999).

### C. Reasonableness of Fee Request

Next, the Court must determine what amount constitutes reasonable attorney fees in this case. *See* 38 U.S.C. § 2412(d)(2)(A); *Perry v. West*, 11 Vet.App. 319, 327 (1998). "The Court has wide discretion in the award of attorney fees under the EAJA." *Chesser v. West*, 11 Vet.App. 497, 501 (1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Chiu*, 948 F.2d at 713; and *Vidal v. Brown*, 8 Vet.App. 488, 493 (1996)). "[T]he 'product of reasonable hours times a reasonable rate' normally provides a 'reasonable' attorney's fee." *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (quoting *Hensley*, 461 U.S. at 433). "The [Court] must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation." *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983). "Hours that are not properly billed to one's **client** also are not properly billed to one's **adversary** pursuant to statutory authority." *Bowling v. Principi*, 15 Vet.App. 379, 383 (2002) (quoting *Hensley*, 461 U.S. at 437, and *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)); *see also Chiu*, *supra*. In determining reasonableness, the Court will consider whether the hours claimed were (1) unreasonable on their face; (2) otherwise contraindicated by the factors for determining reasonableness itemized in *Hensley*, 461 U.S. at 430 n.3, or *Ussery v. Brown*, 10 Vet.App. 51, 53 (1997); or (3) persuasively opposed by the Secretary. *See Chesser*, 11 Vet.App. at 502. This Court "may consider a number of factors, including whether the work performed was duplicative, [whether] an attorney takes extra time due to inexperience, or [whether] an attorney performs tasks normally performed by paralegals, clerical personnel, or other non-attorneys", *Ussery*, 10 Vet.App. at 53, and "may properly reduce the number of hours claimed for time spent in duplicative, unorganized, or otherwise unproductive efforts", *Vidal*, 8 Vet.App. at 493.

The appellant requests reimbursement for $9,786.63 in attorney time (73.1 hours at $133.88 per hour) and $132.55 in expenses, for a total of $9,919.18. Application (Applic.) at 6. In his response, the Secretary does not contest the hourly rate requested or even discuss the reasonableness of the request. However, the Court has an obligation to inquire into reasonableness, even where the Secretary does not, when the Court believes that the fee request may be unreasonable in terms of the

above factors. *See Chesser*, *supra* (concluding that it is "incumbent upon the Court to permit an award only of reasonable fees"); *see also Perry*, *supra* (concluding that "Court must . . . determine what portion, if not all, of the . . . fees plus expenses . . . claimed constitutes 'reasonable' fees and expenses"); *Ramos*, *supra*. In this case, the only issue before the Court at the merits stage was the Board's dismissal of the appellant's accrued-benefits claim – a purely jurisdictional matter. Nonetheless, the appellant devoted the equivalent of nine pages of the summary of argument, argument, and conclusion sections of his brief (some or all of eleven of twelve such pages, *see* Brief (Br.) at 14-24), as well as nine pages of those same sections of his reply brief (nine of thirteen such pages, Reply Br. at 5-13) to at least four arguments in each brief related to the **merits** of the accrued-benefits claim, a matter over which the Court could not have exercised jurisdiction. *See Teten II*, 13 Vet.App. at 364; *see also In re Fee Agreement of Cox*, 10 Vet.App. 361, 366 (1997) (noting that Court "has jurisdiction to review VA adjudicative actions only under 38 U.S.C. § 7252(a) and pursuant to a final Board decision"), *vacated on other grounds sub nom. Cox v. West*, 149 F.3d 1360 (Fed. Cir. 1998); *Horowitz v. Brown*, 5 Vet.App. 217, 225 (1993) ("claimant seeking to appeal an issue to the Court must first obtain a final BVA decision on that issue"). The appellant also argued, in effect, that this Court should not follow an opinion of the Federal Circuit*, Jones (Ethel)*, *supra* (Br. at 16-19), a frivolous argument. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (stating that Federal Circuit decisions constitute "binding precedent" for this Court, just as do Supreme Court decisions); *see also Tobler v. Derwinski*, 2 Vet.App. 8, 14 (1991) (noting "binding" effect of Federal Circuit decisions in this Court).

Altogether the appellant claims a little over 40 hours for the preparation of his brief and reply brief. Applic., Statement for Professional Services Rendered (Stmt.) at 2-3. In view of the fact that 18 of the 37 total pages in these pleadings were devoted to nongermaine contentions relating to matters beyond this Court's jurisdiction, the Court will deduct half of the 40 hours claimed, or $2,677.60 (20 hours x $133.88). For the same reason, the Court will also reduce by half the expenses claimed for photocopying the appellant's brief ($19.60) and apparently for photocopying the reply brief ($9.00) (Applic., Stmt. at 4), a net reduction of $14.30. Hence, the Court will award $7,227.28 as the amount for reasonable fees and expenses. *See Smith (Wilfred) v. Brown*, 8 Vet.App. 327, 329-30 (1995) (citing *Hensley*, 8 Vet.App. at 440, for proposition that where claims are not

related, hours spent on unsuccessful claims should be eliminated, but where claims are related and not easily separated, Court must examine extent of success on those claims); *Uttieri v. Brown*, 7 Vet.App. 415, 419 (1995) (reducing hours based on Court's determination that claim of clear and unmistakable error was not properly before the Court and on Court's rejection of appellant's argument for reversal of BVA decision as clearly erroneous); *cf. Swiney*, 14 Vet.App. at 74-75 (reducing EAJA award where appellant "obtained less than full success on [two] severable issues"); *Elcyzyn v. Brown*, 7 Vet.App. 170, 177 (1994) (citing *Hensley*, *supra*, in support of Court's decision to reduce fees for hours spent preparing claim on which Secretary was substantially justified).

### III. Conclusion

Upon consideration of the foregoing analysis and the pleadings of the parties, the Court grants the appellant's EAJA application in part, in the amount of $7,227.28.

APPLICATION GRANTED IN PART.