# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 00-2015

SALAHUDIN MAJEED, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 5, 2002                                    Decided    October 28, 2002)

*John E. Howell*, of Washington, D.C., for the appellant.

*Darryl A. Joe*, of Washington, D.C., with whom *Tim S. McClain*, General Counsel; *Ron Garvin*, Assistant General Counsel; and *R. Randall Campbell*, Principal Deputy Assistant General Counsel, all of Washington, D.C., were on the pleadings, for the appellee.

Before KRAMER, *Chief Judge*, and FARLEY and STEINBERG, *Judges*.

STEINBERG, *Judge,* filed the opinion of the Court. KRAMER, *Chief Judge,* filed a concurring opinion.

STEINBERG, *Judge*: The appellant, Salahudin Majeed, through counsel, seeks review of an August 14, 2000, decision of the Board of Veterans' Appeals (Board or BVA) that determined that, of the $30,049.92 special separation bonus (SSB) paid to him by the U.S. Army, $24,039.94 was the proper amount to be recouped from Department of Veterans Affairs (VA) disability compensation. Record (R.) at 4, 7. The appellant filed a brief and a reply brief, and the Secretary filed a brief. Oral argument was held on June 5, 2002. On June 6, 2002, the Court ordered the Secretary to file a memorandum notifying the Court of the status of the appellant's then-pending request for a waiver of the amount that, according to VA, he owed to VA as an overpayment of his disability compensation. In response to the Court's order, the Secretary filed a June 20, 2002, response indicating that the appellant's waiver request had been denied on June 18, 2002. On

October 3, 2002, the appellant submitted a notice of supplemental authority regarding a regulatory amendment. The Court has jurisdiction over this case under 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons set forth below, the Court will vacate the Board decision on appeal and remand the matter for readjudication.

## I. Relevant Background

The veteran served on active duty in the U.S. Army from December 1981 to September 1992. R. at 10. Upon separation from service, he received an SSB in the amount of $30,058.67 [hereinafter referred to as $30,000]. (We note that there are minor discrepancies in figures set forth at various points in the record on appeal (ROA). *See, e.g.*, R. at 10 (describing SSB amount as "$30,058.67"), 26 (same), 112 (describing SSB amount as "$30,284.68"), 123 (same), 341 (describing SSB amount as "$30,049.92"), 392 (same). Because our disposition, set forth below, is not predicated on the precise amounts involved here, rounded figures will be used in order to simplify the ensuing discussion. The Court notes that this rounding is intended to improve readability only and not to serve as a recalculation of any amount.) Several readjustments, totaling $9,529.54 [hereinafter referred to as $9,500], were made to the SSB amount, apparently reflecting recoupment by the U.S. Army of an amount sufficient to satisfy obligations, primarily repayment of a reenlistment bonus for which the veteran had not met his full contractual service obligation, that the veteran owed to the U.S. Army. R. at 60. He thereafter served on active duty for training from February through July 1993. R. at 11.

In August 1994, the VA Regional Office (RO) in Atlanta, Georgia, granted the veteran VA service connection for several disabilities, for which he was assigned a combined disability rating of 40%. R. at 18. That VARO informed him that his benefits would be withheld until all of the $30,000 SSB had been recouped. R. at 26. He appealed to the Board the issue of recoupment (R. at 29), and in January 1997 his representative filed with the Board a pleading arguing that the veteran "should receive his service[-]connected disability compensation without recoupment of his separation pay." R. at 38. In February 1997, the Board remanded the veteran's claim to the RO to clarify several matters and then to "readjudicate the veteran's claim that his VA disability compensation is not subject to recoupment of separation pay". R. at 46. After the RO adjudicated

2

the other issues on remand (and apparently did not readjudicate the issue of recoupment, *see* R. at 68, 78), the veteran filed a Notice of Disagreement (NOD) as to that RO decision (R. at 81). It appears that he argued that, because the $9,500 had been deducted from his SSB, he received only $20,755.14 [hereinafter referred to as $20,750] before taxes and that that amount was the proper amount subject to recoupment. *Ibid*; *compare* R. at 97 ("[y]ou should have only been recouping $20,[750]") *with* R. at 81 ("[y]ou should only be collecting separation pay balance of $16,000").

An April 1998 "Report of Contact" seems to indicate that an employee at the Winston-Salem, North Carolina, RO contacted VA's Central Office to request clarification of the amount of SSB to be recouped in the veteran's case. R. at 106. According to an April 1998 Supplemental Statement of the Case (SSOC), "[i]t was determined that only the $20,[750] should be recouped", and, therefore, "[a]n out[-]of[-]system payment of [$9,500 was] made to the veteran". R. at 113. The SSOC went on to note that "[t]he recoupment of . . . SSB[] in the amount of $20,[750] is correct." R. at 114.

The veteran again appealed this decision to the Board; he asserted once more that his benefits should not be subject to recoupment of his SSB. R. at 118. In July 1998, the Board determined, inter alia, that "[t]he veteran's VA disability compensation is subject to recoupment of separation pay". R. at 125. In making this decision, the Board noted that, because "the amount of the separation pay to be recouped is not at issue[,] the Board will not make any findings in that regard." R. at 123. The veteran then appealed the matter to this Court. R. at 137. On January 8, 1999, the Secretary filed a motion to remand the matter for readjudication in light of the post-BVA-decision amendment of 10 U.S.C. § 1174(h)(2). R. at 137. (The amendment to section 1174(h)(2) excluded from recoupment an amount equal to the amount of federal income tax withheld from the separation pay. National Defense Authorization Act for Fiscal Year 1997, Pub. L. No. 104-201, § 653, 110 Stat. 2422, 2583 (1996) [hereinafter NDAA FY 1997 § 653]. That amendment was later extended "to any payment of separation pay under the special separation benefits program under section 1174a of that title that was made during the period beginning on December 5, 1991, and ending on September 30, 1996". *See* Transportation Equity Act of the 21st Century, Pub. L. No. 105-178, § 8208, 112 Stat. 107, 495 (1998) [hereinafter TEAC 1998 § 8208].) On February 13, 1999, the appellant joined in the Secretary's remand motion (R. at 141), and on February 19, 1999,

3

the Court, via an order of the Clerk of the Court, granted the motion, vacated the underlying Board decision, and remanded the matter (R. at 143).

On remand, the veteran filed with the Board a pleading in which he argued, inter alia, that he "should be given every advantage in recalculating the amounts that have been previously recouped from him because the law has been amended to require [that] [f]ederal [i]ncome tax withheld from such pay be deducted from the amount recouped and [be] returned to him." R. at 147. He later filed an additional pleading in which he argued, inter alia, that the Board should "recalculate the amount of previously withheld [f]ederal income taxes to be refunded [to him] as soon as possible by payment of an 'early hardship payment'". R. at 268. In a June 1999 BVA decision, the Board, after noting that "it is not clear why the amount of over $9,000[,] which appears to have represented a debt of the veteran to the service department and which the service department recouped from the separation pay[,] should not have been considered as part of the separation pay" (R. at 319), remanded the claim to the RO, inter alia, to "determine what the difference between the veteran's gross separation pay of $30,[000] . . . and the amount determined by the RO to be his separation pay ($20,[750]) represents (i.e., determine what the $9,[500] represents)" (R. at 321). The Board also directed that, if the $9,500 amount "represents recoupment by the service department of a debt owed due to the veteran's previously having received a reenlistment bonus, the RO should explain why this should not be recouped as part of the separation pay." R. at 321.

The veteran's claim was forwarded to the Baltimore, Maryland, RO. R. at 338. In a July 1999 letter, the RO informed the veteran that records from the Defense Finance and Accounting Service showed the gross amount of his SSB to be $30,049.92, from which $6,009.98 was withheld for federal income taxes, resulting in a net of $24,039.94 [hereinafter referred to as $24,000]. *Ibid*; *see also* R. at 333. The RO then informed the veteran that it "propose[d] to stop [his] benefit payments effective October 1, 1999, to collect the proper [n]et amount" of SSB, i.e., $24,000. R. at 338. An August 1999 Baltimore RO letter to the veteran further explained the calculation of the $24,000 amount. R. at 341-42. At a September 4, 1999, hearing at that RO, the veteran's attorney, Mr. Howell, and the veteran, made the following statements:

> Mr. Howell: Alright. [W]e have been very concerned about the calculations that have occurred in determining recoupment or lack of recoupment in Mr. Majeed's file. There have been a number of different calculations . . . and we wanted this

hearing especially so that we could try and put the correct calculation and the amounts on the record and to answer any questions that might come up about the calculations.

R. at 367.

> Mr. Howell: . . . I calculated this as $20,755.14[,] which is the number shown on this document less . . . the $6,009.98 is $14,745.14 and that was the correct amount to be recouped. Now they already recouped [(]and that's in the letter[)] $20,520.38. What they should have recouped[,] $14,745.14[,] leaves a balance of $5,775 owed and so we're asking for a minimum [reimbursement] of $5,775.22. Is that correct?
>
> Mr. Majeed: That's correct sir.

R. at 369.

In a September 1999 decision, a Baltimore RO hearing officer found that $24,000 was the correct amount of the SSB subject to recoupment. R. at 389. As to the $9,500 used in satisfaction of a debt to the U.S. Army, the RO noted: "Money paid to other sources (i.e., Service Department) to pay off the veteran's debt is SSB 'received' by the veteran. The law makes no provision for waiver of recoupment of SSB used to pay of[f] the veteran's debt." R. at 392. That RO issued an SSOC in October 1999. R. at 406. The veteran appealed this matter to the Board (R. at 395) and argued that the hearing officer's decision "erroneously concluded that the provisions of the law mandated recoupment of the total amount of the separation benefit to which I was entitled, not the amount of the separation bonus that I actually received" (R. at 410).

In the August 14, 2000, BVA decision here on appeal, the Board agreed with the Baltimore RO that, of the veteran's $30,000 SSB, $24,000 was the proper amount to be recouped from VA disability compensation. R. at 4. The Board noted: "There appears to be no remaining dispute that the veteran's disability compensation is subject to recoupment of separation pay; rather, the controversy now pending before the Board pertains solely to the amount of separation pay to be recouped." R. at 3.

Subsequent to oral argument before the Court, the Court issued a June 6, 2002, order directing the Secretary to file a memorandum notifying the Court of the current status of the appellant's request for a waiver of recovery of overpayment of his disability compensation. On

5

June 18, 2002, the appellant filed a pleading captioned "Supplemental Brief of the Appellant"; therein, he states that he is offering that "supplemental brief" in response to a question from the bench at oral argument. June 18, 2002, Pleading at 1. On June 20, 2002, in a response to the Court's June 2002 order, the Secretary indicates that the appellant's waiver request was denied by the Baltimore RO on June 18, 2002. On July 2, 2002, the Secretary filed an opposition to the appellant's June 18, 2002, pleading; he states that that pleading and the arguments therein should be "disregarded" because the Court "did not request or order supplemental briefing in this case, either at oral argument or by Court [o]rder." Opposition at 1. The Court will not accept for filing the appellant's June 18, 2002, pleading, because it was neither requested by the Court nor is it contemplated by the Court's Rules of Practice and Procedure.

## II. Analysis

### A. "Finality" Argument

The appellant argues that the decision by the Winston-Salem RO that $20,750 was the correct amount subject to recoupment (R. at 114) "is binding and must be honored". Brief (Br.) at 3. The appellant maintains that the Board decision under review "improperly introduced the question of the correct amount to be recouped from [the a]ppellant's SSB." Br. at 11. He claims that introducing this issue was improper because "[t]hat issue was not appealed, nor was it before the Board when that decision was made". *Ibid*. He states that, under 38 C.F.R. §§ 3.104(a) and 3.105(b), the decision of the Winston-Salem RO was binding on VA in all subsequent determinations.

*1. Issue(s) Appealed.* The facts of the case belie the appellant's first argument – that he was appealing *only* the issue whether there properly could be any recoupment at all and not the amount of recoupment. Indeed, before the Winston-Salem RO he contested, in addition to the propriety of any recoupment (R. at 98-101), the *amount* that was subject to recoupment (R. at 97 ("[y]ou should have only been recouping $20,[750]")). On appeal of that decision, he again argued the propriety of any recoupment. R. at 118. However, in his first appeal to this Court, he agreed to a remand for consideration of the statutory extension to SSB payments via TEAC 1998 § 8208 of the amendment of 10 U.S.C. § 1174(h)(2) made by NDAA FY 1997 § 653. R. at 141. The amendment of section 1174(h)(2) related to amounts withheld for federal income taxes not being subject to recoupment.

R. at 137. If his argument was *only* as to the propriety of *any* amounts being recouped, this amendment would have had no effect on his case; taxes, whether or not they are withheld, could not affect the primary argument that *no* amount should be recouped.

It seems evident that the veteran, after the February 1999 Court remand, continued to argue that all amounts of recoupment were improper. *See, e.g.*, R. at 350 (August 1999 letter arguing that "[w]e believe that neither *the separation bonus* nor the reenlistment bonus . . . should have been recouped in the first place" (emphasis added)). However, he *also* contested, alternatively, the *amount* of the recoupment. *See, e.g.*, R. at 147, 268, 367, 369, 410. Although it is certainly appropriate for the appellant to argue both the propriety of any recoupment and, in the alternative, the amount of the recoupment, such an argument still constitutes an appeal as to the *amount* of the recoupment. Therefore, to the extent that the two issues are indeed severable (a question that need not be decided here), the appellant is incorrect in stating that the issue of the amount of recoupment "was not appealed, nor was it before the Board when that decision was made." Br. at 11. Furthermore, although the conclusion to the appellant's principal brief here is ambiguous as to the relief sought (the appellant "asks the Court to put an end to the cycle of payment and recoupment so he can order his financial life", Br. at 25), the conclusion to his reply brief clarifies the relief that he is seeking:

> As seen above, the VA has committed a number of errors that are prejudicial to [the a]ppellant. [The a]ppellant should be refunded $9,294.78, which is the difference between the amount determined by the Winston-Salem VARO to be the amount [the a]ppellant "received," $20,755.14 (less federal taxes withheld), and the amount that the Baltimore VARO concluded was correct, $30,049.92 (less federal taxes withheld).

Reply Br. at 11-12. To the extent that he might be correct that he never appealed to the Board, in any respect, the issue of the amount of recoupment – a dubious proposition at best – he has, at this point, appealed that issue; indeed, it is the *only* issue he appealed here. Therefore, the Court rejects the appellant's argument on this point.

*2. 38 C.F.R. §§ 3.104(a) and 3.105(b)*. The appellant's second argument, that 38 C.F.R. §§ 3.104(a) and 3.105(b) make the decision of the Winston-Salem RO final and binding, fails because these regulations appear to pertain to final decisions, and there is no basis for concluding

that *any* of the four RO decisions in the instant case have ever become final. The sections state in pertinent part:

### § 3.104  Finality of decisions.

(a)  A decision of a duly constituted rating agency or other agency of original jurisdiction shall be final and binding on all field offices of the Department of Veterans Affairs as to conclusions based on the evidence on file at the time VA issues written notification in accordance with 38 U.S.C. [§] 5104. A *final and binding* agency decision shall not be subject to revision on the same factual basis except by duly constituted appellate authorities or except as provided in § 3.105 and § 3.2600 of this part.

### § 3.105  Revision of decisions.

. . . .

(b) *Difference of opinion.* Whenever an adjudicative agency is of the opinion that a revision or an amendment of a previous decision is warranted, a difference of opinion being involved rather than a clear and unmistakable error, the proposed revision will be recommended to [VA] Central Office.

38 C.F.R. §§ 3.104(a), 3.105(b) (2001) (boldface italic emphasis added).

As the Secretary correctly points out (Br. at 13), this case (including the decision of the Winston-Salem RO) has remained in appellate status approximately since the initial award of disability compensation in August 1994. The only theory under which the appellant's finality argument could succeed would be if he were able to "sever" the recoupment-amount claim from the recoupment-propriety claim and appeal each claim separately. However, he makes no such contention (and, as shown in part II.A.1., above, even a successful argument on this point would be undercut because he appealed *both* issues).

The appellant appears to misconstrue § 3.104(a) as meaning that the decision of the Winston-Salem RO could not be altered by another RO, *regardless* of the subsequent actions in the case. Such a view implies that a decision of an RO is "final and binding" as of the date it is issued, a result that could be seen as at odds with the availability of an administrative appeal, *see* 38 U.S.C. § 7105; 38 C.F.R. §§ 20.201 (NOD), 20.202 (Substantive Appeal) (2001). *Cf. Teten v. Principi*, 16 Vet.App. 112, 116 (2002) ("at the time of his death, the BVA decision had not become final[] because the time

8

for him to file a timely appeal to this Court . . . had not expired"). However, even assuming arguendo that a decision of the RO is "final and binding" when issued, § 3.104(a) still allows for revision of the "agency decision" by "duly constituted appellate authorities". 38 C.F.R. § 3.104(a) (2001). In this case, the Winton-Salem RO decision was twice subject to review by the Board and was reviewed by the Court, before the decision here at issue was decided by the Baltimore RO, pursuant to specific remand instructions from the Board. To the extent that § 3.104(a) might be read to preclude the Baltimore RO from revising the Winston-Salem RO decision in any case (i.e., because such revision must be done by "duly constituted appellate authorities"), the ultimate revision here was made by the instant BVA decision, which, by its adoption of the RO's finding, would cure any such Baltimore RO error.

Furthermore, the Court notes that were the appellant to prevail on this argument, the *original* RO decision (the October 1994 decision of the Atlanta RO) that concluded that all $30,000 of the SSB had to be recouped (R. at 26) would seem to be just as impervious to revision; in other words, the appellant fails to account for the fact that the Winston-Salem RO decision was *itself* a revision of a prior RO decision and that such a revision would run afoul of the very interpretation of § 3.104(a) that he proposes. (To the extent that the appellant argues that revision of the initial RO decision by the Winston-Salem RO was appropriate under § 3.105(b) (discussed below), in that the Winston-Salem RO revised the original RO decision after consultation with the VA Central Office, the record reflects that the Winston-Salem RO contacted the VA Central Office to "clarify" the recoupment amount (R. at 106), whereas § 3.105(b) provides that the Central Office is to be contacted with a "proposed revision". 38 C.F.R. § 3.105(b) (2001). The appellant has presented no argument supporting a conclusion that the actual revision of an RO decision can be made by the VA Central Office, which is a plausible interpretation of the events in this case.)

As to the appellant's § 3.105(b) argument, the appellant fails to recognize that § 3.105, by the very language of § 3.104(a), is only one of *three* options for revision of an RO decision, the other two being revision by appellate authorities or revision pursuant to 38 C.F.R. § 3.2600 (which, except as discussed in part II.D., below, is not relevant to the current inquiry). Thus, despite the appellant's complaints described above that the RO failed to contact the VA Central Office before revising the

9

Winston-Salem RO decision, the revision of that RO decision was consistent with § 3.104(a). Therefore, the Court rejects the appellant's arguments on this revisability point.

### B. "Received" Argument

The appellant also argues that, under 10 U.S.C. § 1174(h)(2), "received" means only that amount of money that the appellant actually received, in the sense of having custody of it, as his SSB. Br. at 19-24. Section 1174(h)(2) provides:

> (2)   A member who has received separation pay under this section, or severance pay or readjustment pay under any other provision of law, based on service in the armed forces *shall not be deprived*, by reason of his receipt of such separation pay, severance pay, or readjustment pay, *of any disability compensation to which he is entitled* under the laws administered by the Department of Veterans Affairs, but *there shall be deducted from that disability compensation an amount equal to the total amount of separation pay, severance pay, and readjustment pay received, less the amount of [f]ederal income tax withheld from such pay* . . . .

10 U.S.C. § 1174(h)(2) (emphasis added). The appellant argues that the use of the terms "received" and "entitled" is evidence of a Congressional intent to subject to recoupment only the amount of SSB that he actually *received* (i.e., the amount of the check ultimately written to him), rather than the amount initially calculated as due to him. Br. at 19-22. This argument is flawed in several respects. First, as the statute inferentially indicates, the amount of the SSB is subject to taxation. Therefore, the appellant would only "receive" an amount by virtue of the check released to him, which would reflect the amount of "entitlement" minus, at a minimum, the tax withheld. However, the section 1174(h)(2) exclusion from recoupment of any amounts withheld as federal income taxes was, in 1998, statutorily extended to SSB benefits. *See* NDAA FY 1997 § 653; TEAC 1998 § 8208. (Although the legislative history is inconclusive, this amendment may have been made in order to correct an aberration whereby a veteran was taxed on the entire amount of his SSB, then had his nontaxable VA disability compensation benefits used to recoup the pre-tax SSB amount, thereby effectively subjecting to taxation a portion of his nontaxable VA benefits – i.e., the portion used to recoup the pre-tax SSB amount. *See generally Palm v. United States*, 904 F.Supp. 1312, 1314-15 (M.D. Ala. 1995) (stating, prior to amendment of section 1174(h)(2), "[a]lthough it may seem unfair to recoup taxable separation pay by withholding non[]taxable disability compensation, total recoupment without tax relief was clearly intended by Congress"). The appellant's "received" versus

"entitled" distinction does not account for this amendment. If this distinction were viable, Congress would have had no need to amend the provision to account for taxes, because the pre-tax SSB would be the "entitled" amount, and the post-tax SSB would be the "received" amount. The amendment to this section, with its explicit Congressional recognition that taxes withheld should not be recouped, is inconsistent with the appellant's proposed "received" versus "entitled" distinction.

Furthermore, the appellant's reading of "received" (to mean the amount of the check eventually written for the SSB) would require this Court to read section 1174(h)(2) in a unique manner that departs from other federal law. The appellant concedes that the adjustments (in the amount of $9,500) made to his SSB by the U.S. Army were in satisfaction of his debts to the U.S. Army. *See* Reply Br. at 4; *see also In re Kelly*, 88 B.R. 477 (Bank. M.D. Ga. 1988) (describing, in bankruptcy proceeding, recovery of reenlistment bonus as a debt). Under 26 U.S.C. § 61(a)(12), a discharge of indebtedness is considered income. *See also Gitlitz v. Comm'r, IRS*, 531 U.S. 206, 213 (2001) ("[s]ection 61(a)(12) states that discharge of indebtedness generally is included in gross income"). Section 108 of title 26 provides an exclusion from gross income for a discharge of indebtedness, but only if (a) the discharge occurs in a title 11 case; (b) the discharge occurs when the taxpayer is insolvent; (c) the indebtedness discharged is qualified farm indebtedness; or (d) in the case of a taxpayer other than a "C corporation", the indebtedness discharged is qualified real-property business indebtedness. 26 U.S.C. § 108(a)(1). None of these conditions has been shown to exist in this case. Indeed, it appears that the actual federal income tax withheld in this case was $6,000, which was based on the original $30,000 "entitlement" amount. *See* R. at 338.

The appellant also concedes that the $9,500 was an amount he owed to the U.S. Army. There is no indication in the record, nor is it argued by the parties, that, absent the SSB, the appellant would not have owed this amount to the U.S. Army. Indeed, the veteran's attorney conceded that, absent the SSB, the veteran would have owed $9,500 out of "personal finances". R. at 378. Hence, in the sense that the veteran's receipt of a benefit (satisfaction of the debt) is a form of receipt of funds, he did in fact "receive" this $9,500, just as the Board described (R. at 6). His argument, which would essentially have this Court hold that a relief from debt is not "receipt" of funds, has no basis in federal law, and we reject this argument as well.

11

### *C.* **Stegall** *Argument*

The appellant also argues that there is a violation of *Stegall v. West*, 11 Vet.App. 268 (1998), because the Board failed to ensure that the RO complied with the remand instructions in the June 1999 BVA decision (R. at 319-21). In *Stegall*, we held that "a remand by this Court or the Board confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders" and that "a remand by this Court or the Board imposes upon the Secretary of Veterans Affairs a concomitant duty to ensure compliance with the terms of the remand". *Stegall*, 11 Vet.App. at 271.

The appellant's *Stegall* argument fails for several reasons. First, he appears to imply that there is a *Stegall* violation solely because the October 1999 SSOC (R. at 406) failed to respond to the Board's remand directives. Br. at 16. Although the SSOC does not seem to comply with the Board's remand directives, prior to the issuance of that SSOC the Baltimore RO sent to the appellant a detailed letter, dated August 19, 1999, that explained its actions and included three pages of explanatory charts. R. at 341-45. The RO also sent him a detailed RO decision following a hearing. R. at 389-92. In his brief, the appellant acknowledges receipt of the post-hearing decision (although he does not acknowledge the August 1999 letter) (Br. at 17), but states that the decision is inadequate as to one BVA instruction. Hence, our *Stegall* inquiry will focus on that asserted infirmity in the RO decision.

The appellant asserts that the Baltimore RO decision, although adequate as to compliance with all other remand instructions, failed to "answer question 2" of the Board's remand instructions (Br. at 17), which stated as follows:

> The RO should determine what the difference between the veteran's gross separation pay of $30,058.67 . . . and the amount determined by the RO to be his separation pay ($20,755.14) represents (i.e. determine what the $9,303.53 represents). If it represents recoupment by the service department of a debt owed due to the veteran previously having received a reenlistment bonus, the RO should explain why this should not be recouped as part of the separation pay. This should be specifically put in writing with supporting legal authority.

R. at 321. The appellant contends that the RO decision failed to answer this question because "[i]t only conclude[d] that [the a]ppellant 'was erroneously refunded $9[,500] when he should have been refunded tax withheld from SSB payment, which was $6,00[0]'". Br. at 17.

The appellant's argument misrepresents the RO decision. The decision explained both the factual and procedural history of this case (R. at 389-91), and explained what the $9,500 amount represented. The decision then addressed why the RO determined that the $9,500 was a properly recoupable amount: "Money paid to other sources (i.e., Service Department) to pay off the veteran's debt is SSB 'received' by the veteran. The law makes no provision for waiver of recoupment of SSB used to pay of[f] the veteran's debt." R. at 392. The appellant's argument makes sense on only one potential ground: If the Board's remand instruction, which stated that "the RO should explain why this should *not* be recouped as part of the separation pay" (R. at 321 (emphasis added)), were read to *preclude* any new determination as to the amount of recoupment (this question is *involved* in part II.D., below, but is not the *same* question; the question for *Stegall* purposes is compliance with, not the efficacy of, the Board's directives). However, any such reading would conflict with the fourth remand instruction of the Board:

> After the action [sic] above have been completed, the RO should again review the veteran's claim currently in appellate status, under the old and new (or *amended*) versions of 10 U.S.C.[] § 1174(h)(2). In rendering its decision, the RO should specifically note how it arrived at the amount of the veteran's separation pay to be recouped.

R. at 322. It seems incongruous that the Board would order the RO to explain the $10,000 amount, but then dictate the conclusion. Furthermore, the level of detail in the Board's remand instructions would be unnecessary if the intent of the Board were simply to recalculate the amount to determine the amount of income tax withheld.

The appellant apparently is arguing that the Board erred by not enforcing the decision of the Winston-Salem RO: "Further investigation, even a cursory review of the veteran's claims file, would have produced the Winston-Salem Statement of the Case that spelled out the basis for their decision." Br. at 17. That argument is not properly made in the *Stegall* context; the failure of the Board to accept one of the appellant's arguments *is not* a failure of the Board to ensure compliance with its own remand instructions. The RO here complied with the Board's instructions, and thus there was no *Stegall* error.

13

### D. Statement of Reasons or Bases and Consideration of All Applicable Law

The Board is required to consider all relevant evidence of record and to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a), (d)(1); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992). The Board is also required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*. In the instant case, the Court concludes that the Board has violated its duties under sections 7104(a) and (d)(1) in two separate but related ways that warrant remand to the Board for readjudication.

In its adjudication of this claim, the Board failed to consider several potentially applicable regulatory provisions. First, to the extent to which the amount at issue in this case, i.e., the amount that VA has already recouped from the veteran, is classified as a "benefit" or "benefit claim" (a determination that the Board failed to make), the Board failed to consider 38 C.F.R. § 3.105(h) (detailing procedures applicable for reduction or discontinuance of benefits "where [such] reduction or discontinuance of benefits is warranted by reason of information received concerning income") and § 3.2600(d) ("[t]he reviewer may grant a benefit sought in the claim notwithstanding § 3.105(b), but, except as provided in paragraph (e) of this section [(detailing revision of a prior decision on the basis of clear and unmistakable error)], may not revise the decision in a manner that is less advantageous to the claimant than the decision under review"). The former provision, if applicable, would subject the liability-increase decision to definite procedural safeguards, which have seemingly not been followed, whereas the latter provision, if applicable, would bar the actions of the Baltimore RO.

14

Second, the Board failed to consider 38 C.F.R. § 1.912a (collection by offset from VA benefit payments). It appears that, after the initial determination by the Atlanta RO that $30,000 was the proper amount subject to recoupment (R. at 26), that full amount was recouped. *See* R. at 113 (Winston-Salem RO, in setting proper amount at $20,750, made **payment** of $9,500 difference to appellant, implying that entire $30,000 amount had been recouped). Following the Baltimore RO's liability-increasing recalculation, therefore, there was an overpayment amount that the Secretary subjected to recoupment. (We estimate this amount to be approximately $3,500, consisting of the $9,500 payment made to the appellant by the Winston-Salem RO minus the $6,000 withheld from the SSB as federal income tax, which amount was calculated by the Baltimore RO as not being subject to recoupment.) To the extent that this $3,500 is fairly classified as a "debt" rather than part of the original statutorily-mandated offset under section 1174(h)(2) (a determination that the Board, again, failed to make), i.e., because that section 1174(h)(2) amount had **already** been recouped in full and the $3,500 represented, therefore, a VA overpayment, then § 1.912a would seem to apply, and the Board would have to ensure that VA complied with the procedural safeguards listed in that provision. The Board, in failing to consider the potential applicability of the above three provisions and possibly other applicable ones, has violated its duty under section 7104(a), *see* 38 U.S.C. § 7104(a); *Weaver*, *Sanden*, and *Schafrath*, all *supra*, and its duty under section 7104(d)(1) to provide an adequate statement of reasons or bases discussing such provisions, *see* 38 U.S.C. § 7104(d)(1); *Allday*, *Caluza*, *Gabrielson*, and *Gilbert*, all *supra*. Therefore, the Court will vacate the Board decision and remand the matter for readjudication.

Furthermore, as stated above, the original determination of the Atlanta RO was that the entire amount of the appellant's SSB ($30,000) was the proper amount to be recouped (R. at 26), and the Winston-Salem RO recalculated this figure to a lower amount ($20,750) (R. at 114). It appears that the appellant had appealed this matter seeking, inter alia, a further **downward** recalculation of this amount (i.e., seeking a figure **less than** $20,750 as the proper amount), in that he continued to appeal the matter despite the fact that the Winston-Salem RO had granted him most, but not all, of the recalculation he had sought. *See* R. at 81 (February 1998 NOD (as to January 1998 RO decision, R. at 78) arguing that correct amount subject to recoupment was $16,000), 112-13 (Winston-Salem RO decision recalculating the amount subject to recoupment as $20,750), 123 (July 1998 Board

15

decision, on appeal from Winston-Salem RO decision). The net result, however, after the income-tax-withholding recalculation mandated by the 1999 Court remand (R. at 135), was a $3,250 *increase* in the appellant's liability.

It is well settled that the veterans-benefits system is a pro-claimant system. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994) (stating, in context of statutory interpretation, "interpretive doubt is to be resolved in the veteran's favor"); *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998) (stating that "[t]his court and the Supreme Court both have long recognized that the character of the veterans' benefits statutes is strongly and uniquely pro-claimant" and describing "the historically non-adversarial system of awarding benefits to veterans"); *Trilles v. West*, 13 Vet.App. 314, 326 (2000) (describing "the VA pro-claimant nonadversarial claims adjudication process"); *Moore v. West*, 13 Vet.App. 69, 74 (1999) (Steinberg, J., concurring) (describing "the pro-claimant nature of the VA adjudication process"). Moreover, a review of the pertinent regulations shows that the Secretary has established rather detailed procedural safeguards for a variety of situations in which a claimant's benefits may be reduced, *see*, *e.g.*, 38 C.F.R. § 3.105(e)-(i) (2001), and there is no indication that the Board considered the applicability of any such process to the instant context. For example, in cases in which a reduction in the rating of a service-connected disability is proposed, the following procedure attaches:

> Where the reduction in evaluation of a service-connected disability or employability status is considered warranted and the lower evaluation would result in a reduction or discontinuance of compensation payments currently being made, a rating proposing the reduction or discontinuance will be prepared setting forth all material facts and reasons. The beneficiary will be notified at his or her latest address of record of the contemplated action and furnished detailed reasons therefor, and will be given 60 days for the presentation of additional evidence to show that compensation payments should be continued at their present level. Unless otherwise provided in paragraph (i) of this section, if additional evidence is not received within that period, final rating action will be taken and the award will be reduced or discontinued effective the last day of the month in which a 60-day period from the date of notice to the beneficiary of the final rating action expires.

38 C.F.R. § 3.105(e); *see also* 38 C.F.R. § 3.105(i) (detailing right to predetermination hearing for those affected by, inter alia, procedures under § 3.105(e)-(h)).

In this case, the Board allowed the RO to increase the veteran's liability (R. at 321) and then subsequently ratified that increase (R. at 7). Thus, the veteran, who was seeking a $4,750 reduction in his liability, received instead a $3,250 increase; this result appears to be at odds with the pro-claimant nature of the veterans-benefits system. By ratifying this increase in liability, the Board essentially created a process whereby the veteran had to take an appeal at his own risk, i.e., the risk that not only might he not receive what he requested but that he might end up in a worse position. Where VA procedures authorize the Secretary to reduce benefits in certain contexts, as do 38 C.F.R. § 3.105(e)-(i), such a reduction must be preceded by detailed and specific procedural safeguards that fully and fairly give the claimant notice of the proposed reduction and an opportunity to contest it. *See also Sutton v. Brown*, 9 Vet.App. 553, 569-70 (1996) (calling for unified approach requiring advance notice to appellant before Board considers evidence or issue ***not*** considered by RO). No such procedure appears to have been followed in this case.

The Court emphasizes that it is not concluding that under no circumstances could the Secretary lawfully take the actions that he has in this case. However, on remand, the Board must provide a full explanation of (1) its authority to increase the appellant's liability (including its jurisdiction to do so, as raised in the concurring opinion), (2) whether any prior protective procedures attached to such an action, and (3) whether VA complied with those procedures. *See* 38 U.S.C. § 7104(a), (d)(1); *Weaver, Allday*, *Caluza*, *Gabrielson, Sanden, Schafrath*, and *Gilbert*, all *supra*. To the extent that the Secretary concludes that he is authorized to create such an "appeal-at-your-own-risk" scenario, he faces a heavy burden to explain adequately how such a scenario comports with the pro-claimant nature of the veterans-benefits system. Therefore, the Board decision is vacated on this basis as well to permit the Board to address these issues on remand.

### III. Conclusion

On the basis of the above analysis, the ROA, and the submissions of the parties, the Court vacates the Board decision and remands the matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 5103(a), 5103A, 5107, 7104(a), (d), 7105; 38 C.F.R. §§ 1.912a, 3.105(e)-(i), 3.2600(d); 66 Fed. Reg. 45,620, 45,630-32 (Aug. 29, 2001) (amending 38 C.F.R. § 3.159, as applicable); and *Fletcher*

17

*v. Derwinski*, 1 Vet.App. 394, 397 (1991), all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" of claims remanded by BVA or the Court) [hereinafter VBIA § 302], *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (holding that VBIA § 302 applies to all elements of claim remanded by Court or Board), and with all applicable law and regulation. *See Allday*, 7 Vet.App. at 533-34. On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order) (concluding that an appellant is entitled, until 90 days after Board mails postremand notice to appellant, to submit additional evidence and argument or to request hearing on appeal at which appellant may submit new evidence), and all applicable law and regulation. The Court notes that a remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall*, *supra*. The appellant's June 18, 2002, pleading captioned "Supplemental Brief of the Appellant" is not accepted for filing because the Court at no point ordered such briefing. The Clerk of the Court will return this pleading to the appellant. A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

   VACATED AND REMANDED.


   KRAMER, *Chief Judge*, concurring: I concur in the vacatur of the August 14, 2000, Board of Veterans' Appeals (Board or BVA) decision and remand of the appellant's claim. I write separately, however, because I believe that the remand in this case should be ordered at this time on a somewhat different basis.

   On appeal to this Court, the appellant asserts that he did not appeal the April 1998 determination by the Winston-Salem VA regional office (RO) that the amount of his pre-tax special separation bonus (SSB) subject to recoupment was $20,755.14. Appellant's Brief (Br.) at 11; *see*

Record (R.) at 111-14. The appellant further asserts and the record reflects that the Board, in its July 31, 1998, decision dealing with the assignment of effective dates for his service-connected disabilities, recognized that the amount of pre-tax SSB subject to recoupment was not at issue and that, in April 1998, the Winston-Salem RO had determined that $20,755.14 was the pre-tax SSB amount to be recouped. Appellant's Br. at 11; *see* R. at 123. The appellant then asserts that, subsequent to the filing with this Court of his Notice of Appeal from that July 1998 BVA decision, the joint remand sought by the parties and ordered by the Court was for the sole purpose of calculating and refunding to him, in light of the amendment of 10 U.S.C. § 1174(h)(2) during the pendency of his claim, the amount of federal income tax that had been withheld from his SSB. Appellant's Br. at 12; *see* R. at 135-38, 141, 143; 10 U.S.C. § 1174(h)(2) (amount equal to total amount of separation pay, inter alia, received less amount of federal income tax withheld from that pay shall be deducted from disability compensation); *see also* Transportation Equity Act for the 21st Century, Pub. L. No. 105-178, § 8208, 112 Stat. 107, 495 (1998); National Defense Authorization Act for Fiscal Year 1997, Pub. L. No. 104-201, § 653, 110 Stat. 2422, 2583 (1996). The appellant argues that, therefore, the issue of the proper amount of his pre-tax SSB that is subject to recoupment was not properly before the Board when it rendered either its June 28, 1999, decision remanding his claim to the RO or its August 14, 2000, decision presently on appeal. Appellant's Br. at 11-14. (I note that the June 1999 remand was for further development and that, in that remand, the BVA directed the RO, inter alia, to specifically note how it had arrived at the amount of SSB to be recouped. R. at 319-22.) The ultimate result of those Board decisions was an increase in the pre-tax SSB amount subject to recoupment.

The initial question presented to the Court here is whether the April 1998 Winston-Salem RO determination that the pre-tax SSB amount subject to recoupment was $20,755.14 (which pre-tax amount subsequently was increased to $30,049.92 in July 1999 by the Baltimore RO and was affirmed by the BVA in the decision on appeal) was in appellate status and thus properly before the Board. In this regard, it does not appear from the record on appeal (ROA) that the appellant filed a Notice of Disagreement (NOD) as to the April 1998 Winston-Salem RO decision. *See* 38 U.S.C. § 7105 (filing NOD and appeal). *Compare Collaro v. West*, 136 F.3d 1304, 1308-09 (Fed. Cir. 1998) (as to appellant's general and broad NOD), *with Ledford v. West*, 136 F.3d 776, 779-80 (Fed.

Cir. 1998) (as to appellant's specific and limited NOD). The ROA does reflect, however, that, when his case previously was before this Court on appeal, the appellant joined in a joint motion for remand that required VA to determine the applicability to and the effect upon his case of the amendment of 10 U.S.C. § 1174(h)(2), which amendment required the deduction from pre-tax SSB of the amount of federal income tax withheld to determine the net amount of SSB to be recouped. R. at 136-37, 141; *see* R. at 143 (February 19, 1999, Court order granting motion to remand and vacating July 1998 BVA decision).

In the August 2000 decision presently on appeal, the Board "point[ed] out" (in essence concluded) that the April 1998 Winston-Salem RO decision regarding the correct amount of the appellant's pre-tax SSB to be used in a recoupment calculation was "rendered during the course of the present appeal" and, therefore, pursuant to the appellate process, was being reviewed in its decision. R. at 6. However, given that the Board did not address the matters discussed in the preceding paragraph in so concluding that this issue was in appellate status, I believe that the Board reached this conclusion prematurely and thus failed to provide an adequate statement of reasons or bases as to why it had the authority to consider the accuracy of $20,755.14 as the pre-tax SSB amount subject to recoupment. *See* 38 U.S.C. § 7104(d)(1); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). Thus, I would vacate the August 14, 2000, Board decision and remand the appellant's claim for readjudication on this basis.